[Civ. No. 33499. Second Dist., Div. One. Dec. 23, 1969.]

LOUISE L. McDONAGH, Individually and as Executrix, etc.,
Plaintiff and Appellant, v.
RALPH LOUIS GOURNEAU, Defendant and Respondent.

[Civ. No. 33500. Second Dist., Div. One. Dec. 23, 1969.]

FLORENCE HUEBNER, as Executrix, etc., Plaintiff and Appellant, v.
RALPH LOUIS GOURNEAU, Defendant and Respondent.

(Consolidated Cases.)

■■■■■■■

**COUNSEL**

Fizzolio & Fizzolio, James M. Fizzolio and Carl Q. Christol for Plaintiffs and Appellants.

Kean & Engle, Frederick F. Lower, Jr., and Henry F. Walker for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—In each of these two wrongful death actions against defendant Gourneau and others, consolidated below as well as here, the trial court granted Gourneau's motion to dismiss for failure to file return of summons and have judgment entered within three years, absent a stipulation by the parties that the above time be extended, pursuant to section 581a, Code of Civil Procedure. The appeal in each matter is from the order removing Gourneau from the case, it being contended that the court erred in vacating a stipulation (extending time) executed by him more than five years after he was served.

There is no dispute as to certain essential facts. In the McDonagh case summons was issued on August 7, 1961, and Gourneau was thereafter served on August 31, 1961; return of service was not filed, however, until June 10, 1966. In the Huebner case, summons was issued on August 31, 1961, Gourneau being served the same day; but the return of such service was not made until May 12, 1967. At the time of each service Gourneau was in custody awaiting the disposition of felony charges arising from the accident in question. Upon subsequent commitment to the Youth Authority, he remained with that agency until December of 1965 when, under the Interstate Pact, he was allowed to return on parole to his home in North Dakota. Not until June of 1965 did he again take up residence in California. In July of 1966 he was once more arrested for felony drunk driving; following a plea of guilty, in November of that year he was sentenced to state prison for the prescribed term.

Meanwhile a pretrial conference had been held on March 10, 1965. From such conference the following factual issues and contentions emerge: According to the plaintiff in each action, defendant Gourneau drove a 1951 Chevrolet in such a negligent manner that it collided with a 1960 Rover operated by McDonagh's testate, Joseph Lorenzi, in which Huebner's testate, Amalia Lorenzi, was a passenger, causing injuries which subsequently resulted in their deaths. At the time of the accident the Chevrolet was owned by defendant John Robb and defendant Arthur Davis, doing

business as Davis Motors, and Gourneau and defendant Longie (the latter a passenger in the Chevrolet) were using the vehicle with the permission of Robb and Davis and as their agents. Defendants Robb and Davis contended, among other things (including the issue of agency), that there was a sale of the Chevrolet before the accident; that since notification of such sale was given to the Department of Motor Vehicles they were thereby relieved of civil liability. It was accordingly ordered, all appearing parties having stipulated to such effect, that trial of the issue of ownership be held in advance of trial on the issues remaining. The pretrial conference order also included the following recital: "It appears that no defendant has appeared in the matter except the defendants Davis and Robb; but it is represented to the Court by plaintiff's counsel that lawful service of process herein has been made upon defendants Ralph Louis Gourneau and Vernon Longie. Plaintiffs intend to have entered the defaults of the last-named person and take appropriate proceedings thereafter. Therefore, upon motion of plaintiff, the action is dismissed as to all defendants other than Davis, Robb, Gourneau and Longie."

Thereafter, in June of 1966 a trial was had before Judge Bauder on the issue of ownership of the Chevrolet; the following month Judge Bauder ruled that the vehicle was owned by defendant Robb and that permission had been given Longie by Robb to drive the vehicle. (Longie, in turn, had apparently allowed his passenger [Gourneau] to take the wheel.)

Continuing in chronological sequence, on October 5, 1966, while in custody but before imposition of sentence to state prison on the second felony charge, Gourneau executed a document for use in both cases entitled "Stiplation for Extension of Time to File Return of Service," such extension being to December 31, 1966;[1] on November 30, 1966, while confined in state prison, Gourneau executed another document entitled "Stiplation for Extension of Time to Have Judgment Entered." Both documents were typewritten on the stationery of plaintiffs' counsel. On December 8, 1966, a "Default Entry by Court" as to Gourneau was filed.

The following month (January 1967) a mistrial was declared on the court's own motion because of Judge Bauder's death. On April 5, 1967, the two cases were transferred for trial to Judge Chantry sitting without a jury. The transcript of proceedings before Judge Bauder was filed with the court for its consideration. Oral and documentary evidence were produced on plaintiffs' behalf on the first and following day (April 6). The sole defendants appearing, Davis and Robb, called no witnesses at the conclusion of plaintiffs' case but reserved the right to ask for an order that the deposi-

---

[1]Despite the above, return of service in the Huebner case (as noted earlier) was not made until May 12, 1967.

tion of defendant Gourneau be taken within the five days next following. The court then ordered the attending parties' counsel to file briefs ("14 and 5") and upon such filing "cause to stand submitted at that time."

On April 21, 1967, defendant Gourneau's "Notice of Motion to Set Aside Default, Strike and Vacate Declarations and Stipulations, and for Order of Dismissal" was filed. His supporting affidavit appears below.[2] Based upon the provisions of sections 473, 581a and 583, Code of Civil Procedure, as well as "the inherent equity powers of this Court," the notice of motion declares that it will be made "on the grounds that said default was taken against said defendant through his mistake, inadvertence and excusable neglect, that said Declaration and Stipulations were entered into and signed by said defendant through his mistake, inadvertence and excusable neglect, and due to extrinsic fraud and that said defendant lacked capacity to so stipulate, and on the further ground that the return of the

---

[2]"I am an Indian, born and raised on the Reservation at Turtle Mountain, North Dakota. I did not go to school very long. I do not understand legal matters or legal words.

"On or about October 3, 1966, October 5, 1966, and November 30, 1966, a man who said he was sent by an attorney named Christol came to me and asked me to sign papers. Each time, I was told that it would help my brother-in-law, Vernon Longie, stay out of trouble if I signed the papers. I wanted to help my brother-in-law, Vernon Longie, so I signed the papers. I did not read any of these papers before I signed them, and I did not understand them when I signed them. I only understood that it would help my brother-in-law if I signed them.

"I did not, and do not now, understand what it means to 'stipulate', and I did not, and do not now, know or understand what a 'stipulation' is.

"I did not, and do not now, know or understand what a 'waiver' is, and I did not, and do not now, know or understand what it means to 'waive the provisions of Sections 581-A and 583 of the Code of Civil Procedure'. I did not, and do not now, know or understand what those sections say.

"I did not, and do not now, know or understand what the following words mean: 'Notwithstanding the provisions of Section 581-A of the Code of Civil Procedure of the State of California, the time for filing the return and proof of service of the Summons and Complaint upon Ralph Louis Gourneau in the above matter, which service was duly made upon him on August 31, 1961, while he was in the custody of the Sheriff of Los Angeles County, at the Los Angeles County Jail, Los Angeles, California, may be extended up to and including December 31, 1966'.

"I did not, and do not now, know or understand what it means to 'consent that the time within which plaintiff shall bring the matter to trial and the time within which plaintiffs shall have judgment entered after service of Summons upon him may be extended until such time as plaintiffs may require to bring said action to trial and to have judgment entered thereon'.

"All of the papers I signed were just words to me and I don't really understand what they mean now and I didn't understand them when I signed the papers. I signed them because I thought it would help Vernon Longie. I did not know that it would hurt me to sign the papers or be bad for me to sign them.

"I now understand that a judgment couldn't have been brought against me if I hadn't signed those papers. If I had known that before I signed the papers I would not have signed any of them.

"All of this paper has been read to me on April 17th, 1967, and I understand all of it, except those parts which say don't understand. All of it is true and correct."

Summonses in the within actions has not been made within 3 years of the commencement of the action, that no judgment has been entered within 3 years after alleged service of Summonses, the defendant not having answered, and that 5 years have elapsed since the filing of the actions and plaintiffs have failed to bring said actions to trial against this defendant."

Affidavits in opposition were filed by plaintiffs, included therein being averments relative to Gourneau's absence from California from December of 1962 until June of 1965 and plaintiffs' efforts to locate him during such period. The matter having been submitted upon the respective affidavits, pro and con, the motion was thereafter granted by the trial court which filed a memorandum opinion (part of the minute order) elucidating its views in the premises. After pointing out that Gourneau was served with process shortly after the commencement of each action, the court stated that it could see no merit in plaintiffs' contention that the absence of the defendant from the state tolled the statute either with respect to filing return of summons or entry of judgment within the three-year period. Continuing, "Irrespective of that fact, it is difficult for this Court to believe that one in the circumstances in which the defendant Gourneau is now encased, would waive his rights thereunder and consent to judgment being entered against him. For that reason the Court accepts as true, the statements set forth in his affidavit concerning his understanding, or lack of understanding as to the content and meaning of the papers that he signed. The defendant was without counsel and a man of very limited educational background."

■ The issues raised by Gourneau's motion having been determined on the affidavits submitted, as to factual questions we are bound by the same rule where oral testimony is presented for review. (*Lynch* v. *Spilman,* 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636].) In that case it was again declared that " 'the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.' [Citations.]" (P. 259.) ■ It is settled that relief from a stipulation may be granted in the sound discretion of the trial court where there is mistake of fact or other special circumstances rendering it unjust to enforce the stipulation (*Gonzales* v. *Pacific Greyhound Lines,* 34 Cal.2d 749, 755 [214 P.2d 809]); and an appellate court will interfere only where such discretion has been abused. (*Lyons* v. *Lyons,* 190 Cal.App.2d 788, 790 [12 Cal.Rptr. 349].) As indicated by the above quoted portion of the court's memorandum decision, it chose to believe the claims asserted by Gourneau in his affidavit and its determination in that regard ordinarily becomes conclusive in light of the rule restated in *Lynch.* Predicated upon contentions presently

to be discussed, plaintiffs nevertheless argue that it was error to set aside the stipulation notwithstanding the foregoing determination of mistake of fact, inadvertence or other grounds asserted in the moving papers.

The governing statute (§ 581a, Code Civ. Proc.) contains two paragraphs: In pertinent part the first requires that there be a service of summons and a return of such service within three years after commencement of the action "except where the parties have filed a stipulation in writing," failing which the action shall not be "further prosecuted, and no further proceedings shall be had therein." The second paragraph covers the situation where service has been shown to have been made but no answer has been filed and plaintiff fails to have judgment entered within three years after such service; in such cases "except where the parties have filed a stipulation in writing that the time may be extended," it is further provided that "All actions, heretofore or hereafter commenced, shall be dismissed by the court . . . on its own motion, or on the motion of any party interested therein. . . ."

At least until the decision in *Wyoming Pac. Oil Co.* v. *Preston,* 50 Cal.2d 736 [329 P.2d 489], the foregoing language of section 581a was held to be both mandatory and jurisdictional; in *Wyoming Pacific,* however, it was stated that section 581a is similar both in general purpose and language to the provisions of section 583 requiring the dismissal of actions not brought to trial within five years after being filed, the view being expressed "that notwithstanding the mandatory language of section 581a, the trial court is vested with discretion in applying the exceptions comparable to the discretion with which it is vested in applying the exceptions to section 583." (50 Cal.2d at pp. 740-741.) It was further therein stated: "As with the exercise of the court's other inherent and statutory powers to dismiss actions for want of diligence in either serving the summons or bringing the action to trial, the discretion permitted must be 'exercised in accordance with the spirit of the law and with a view of subserving, rather than defeating, the ends of substantial justice.' [Citation.]" (50 Cal.2d at p. 741.) The discretion with which the court is vested under section 581a being co-extensive (in light of the above decision) with its discretion under section 583, plaintiffs contend that the circumstances at bar required an extension of the three-year period by operation of the doctrine of equitable estoppel.

"The equitable doctrine of estoppel *in pais* is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations. A person by his conduct may be estopped to rely on the statute. . . ." (*Regus* v. *Schartkoff,* 156 Cal.App.2d 382, 386 [319 P.2d 721].) Also cited is *Hill* v. *Superior Court,* 251 Cal.App.2d 746, 750 [59 Cal.Rptr. 768], where the court, by way of assumption, pointed out "that upon a sufficient factual basis the doctrine of equitable estoppel might be invoked to avoid the mandatory requirements of section 581a that an action 'must

be dismissed by the court . . .' unless the summons is served and return thereof made within the specified three-year period."

The circumstances relied on are these: By answers to certain interrogatories, it is undisputed that the Chevrolet was insured by Travelers Insurance Company for defendants Davis and Robb. At the pretrial hearing, the firm of Schell & Delamer, employed by the above insurer, took no steps to appear on behalf of Gourneau and made no objection when apprised of plaintiffs' intentions to take his default at a later date and pursue appropriate proceedings thereafter. Not until mid-April of 1967, while the trial was in recess pending the filing of briefs on the issue of the vehicle's ownership, did the insurer assertedly become concerned as to the entry of a default judgment against Gourneau, at which time through another firm of attorneys (Kean & Engle) contact was made with Gourneau, resulting in the affidavit he executed which supported the motion thereafter made. According to plaintiffs, the real party in interest here is this same insurer which, until the filing of the motion, had been willing to "jettison" Gourneau[3] even though, upon appropriate proof, it would have been liable for his negligence as a permissive user under allegations to that effect in each complaint. Emphasized by plaintiffs are certain decisions holding that injured parties have a direct beneficial interest in a contract of insurance, that insurance carriers are under a duty to properly investigate any accident for which they might be potentially liable under the facts as pleaded, and that the duty to defend is assertedly absolute and cannot be avoided. (See *Barrera* v. *State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674]; *Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].)

The above two decisions, as well as others cited by plaintiffs, involved actions to compel payment by the insurer of the judgment secured against the insured upon the former's refusal or omission to defend; still another decision, *General Ins. Co. of America* v. *Whitmore,* 235 Cal.App.2d 670 [45 Cal.Rptr. 556], dealt with a declaratory relief action by the insurer to determine its liability under a public liability policy it previously had issued. Manifestly the salutary rules re-enunciated in the first two cases, while applicable to the facts there presented, do not apply in the present proceeding where no judgment had ever been rendered or entered against anybody, insurer or insured, at the time the challenged order was made. As for the *Whitmore* case, there was clearly no reason for Travelers to commence

---

[3]Indeed, in the course of the April 1967 trial it was stated to the court by Mr. Belanger (of Schell & Delamer) appearing for defendants Davis and Robb: "We admit that Gourneau was negligent, and that his negligence was a proximate cause of the accident and the death of the plaintiff's decedent. If that be helpful at all, we will be glad to stipulate."

declaratory relief proceedings in light of its decision, presumably made after investigation, that their insureds (Davis and Robb) were not the owners of the Chevrolet. Of course, having thus denied coverage the insurer here did so at its own risk (*Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]); as stated in that case, "if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." (P. 660.)

The insurer's asserted role as the real party in interest is also made the basis of the claim that Gourneau was and is represented by counsel with divided loyalties, one of which was to the insurance company which assertedly employed them. This conflict of interest, according to plaintiffs, presumably supports the inference that his counsel never advised Gourneau of his potential liability as an uninsured motorist in view of the insurer's claim of noncoverage under the policy issued on the Chevrolet. As a result, says plaintiffs, Gourneau was unable to exercise the independent judgment required of him in the circumstances. We are unable to follow this argument, even assuming that there is some justification for the claim that counsel in question were serving two masters. Even if Gourneau had been advised of his possible liability as an uninsured motorist, and there is nothing to indicate that such information was not forthcoming, would it not have been to his advantage to execute a document which could remove him from the case entirely? ■ Insofar as the above claim relates to the issue of equitable estoppel, and what is now said applies to that issue's involvement in its entirety, it is settled that the doctrine in question may not be properly invoked in the absence of proof that the party claiming estoppel was injured or damaged by reliance on the other party's conduct. (*Powers Regulator Co.* v. *Seaboard Surety Co.,* 204 Cal.App.2d 338, 345 [22 Cal.Rptr. 373].) ■ As will be shown plaintiffs attempted to secure a benefit to which they were not entitled, and hence the ruling below simply restored the *status quo* theretofor existing between all concerned.

As noted earlier, in each of the instant actions Gourneau was served with summons on August 31, 1961. Although the statutory three-year period for return of service expired on August 31, 1964, nothing apparently was done about plaintiffs' intentions to hold him accountable for the torts alleged until the pretrial conference conducted in March of 1965, more than five months after the expiration of the above period, at which time the court was advised of plaintiffs' proposal to have his default entered. One of plaintiffs' key cases, *Wyoming Pac. Oil Co.* v. *Preston, supra* (50 Cal.2d 736), which is cited several times in their briefs for the "implied exceptions" said to govern, declares that there must be a showing that it was "impracticable" or "futile" to comply with the provisions of the statute, either section

581a or section 583. In such case, it has been declared, "the plaintiff must show 'not only objective impossibility in the true sense, but also impracticability due to excessive and unreasonable difficulty or expense.' [Citation.]" (*Hill* v. *Superior Court, supra,* 251 Cal.App.2d 746, 755.) There is no showing here that it was objectively impossible or would have been impracticable or futile for any reason to return the summons with proof of service within the time prescribed. Although a proper concern for the protection of their clients' interest would have dictated compliance by counsel with the above procedural requirements, resort instead was had to the provision allowing extension of the statutory time by stipulation. The trial court found on conflicting affidavits evidence that the stipulation was a nullity; in so doing, it impliedly ruled against the various claims asserted by plaintiffs that the case is one which calls for the application of certain exceptions countenanced by decisional law.

One such refinement of the same decisional law, not heretofore mentioned, pertains to the point that the stipulation, subsequently vacated, was filed after the expiration of the prescribed period and, therefore, was wholly inoperative. In *Big Bear Municipal Water Dist.* v. *Superior Court,* 269 Cal.App.2d 919, 922-924 [75 Cal.Rptr. 580], it was held that such a document filed after the statutory expiration date did not render it ineffective in the circumstances of that case; however, there is authority to the contrary (*National Union Fire Ins. Co.* v. *Superior Court,* 247 Cal.App. 2d 326, 329-330 [55 Cal.Rptr. 574]) where the court found that a similar stipulation (tardily filed) did not constitute a "general appearance" within the meaning of the statute. Despite the above contrariety of opinion, the determination reached below would remain the same in light of the trial court's determination of the factual questions there involved.

We have examined plaintiffs' other points, all of which are subsidiary to those already discussed; none compel a disposition of the appeal from the order challenged other than that above indicated.

The orders are affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 19, 1970.