[No. D014363. Fourth Dist., Div. One. May 4, 1993.]

GEORGE ATEEQ, Plaintiff and Respondent, v.
ELIA NAJOR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

─────────────────────────────────

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Kennan E. Kaeder for Defendant and Appellant.

Donald W. Schmidt for Plaintiff and Respondent.

**OPINION**

**WORK, Acting P. J.**—Elia Najor appeals a judgment in favor of George Ateeq after the jury returned a special verdict in Ateeq's favor and the court subsequently denied Najor's motion for judgment based on a statute of limitations defense. Najor asserts the court erred in finding he was estopped from pleading the statute of limitations defense because of the duress he imposed on Ateeq through wrongful threats of deportation. Najor also asserts the court erred in finding he waived his objections to certain evidence

offered by Ateeq for failure to state any objections to such evidence in the joint disposition conference report. Finally, he asserts the court erred in demanding he provide Ateeq with his personal financial statement, and, as a result, the punitive damages award should be reversed. For the reasons discussed below, we affirm the judgment.

I

Since only a brief description of the factual background is necessary to dispose of this appeal, we provide just a short summary of the complex, and oftentimes confusing or nebulous, facts in this matter. Ateeq was born in Iraq in 1928 and eventually acquired and operated businesses there. In 1975, he visited the United States and met Najor, an Iraqi who had lived and prospered in California for many years. Upon the advice of Najor and Louie Attiq, Ateeq's cousin, he opened a bank account in San Diego with Attiq. After his return to Iraq, Ateeq began sending money to Attiq and Najor for deposit in that and other accounts. By 1977, the account balance had grown to $70,000.

When Ateeq visited California in 1977, he gave a general power of attorney to Najor and Attiq as to investments bought among them and for handling the bank accounts. The three men agreed to a partnership where they would purchase parcels of land as investments. Ateeq decided he would like to move to California with his family. Najor attempted to help him obtain residency in the United States through a business investor program. Najor took Ateeq to see an attorney, William Andrus, who helped Ateeq fill out immigration forms. Ateeq paid $42,250 to Najor and entered into a partnership agreement with him pursuant to which he acquired a one-half interest in Najor's Farmer's Jack Market in San Diego, after Najor and Andrus told him this investment would allow him to come into the United States as a business investor.

Over the years, Ateeq kept sending money from Iraq to Najor for deposit into his bank accounts in the United States for which Najor had a power of attorney. After waiting for his business investor application to be approved to no avail as the program ended in late 1977, Ateeq came to the United States in 1979 as a visitor and apparently remained for some time. He traveled with Najor and Attiq to Victorville and Hesperia and purchased land with them using moneys from his accounts.

In 1981, Ateeq visited the United States again and extensively discussed with Najor their business dealings. A difference of opinion arose between them, and Ateeq subsequently revoked the powers of attorney. Ateeq hired

Margaret Bergwall, a real estate agent, to review the deeds and other documents he had as to the various investments. She found many discrepancies in legal descriptions and that some of Ateeq's deeds were unrecorded and differed from the recorded deeds which excluded him from ownership. Due to the complexity of the issues, she recommended Ateeq hire an attorney. However, Ateeq said he could not do so, because he had "much trouble" and was afraid Najor would have him deported. Ateeq continued to tell Bergwall that over the years. Ateeq's son, Saad Ateeq, also was told of Najor's repeated threats to have his father deported if he said anything or did anything about the discrepancies in the accounts and investments.

After Najor sold one of the properties in 1987 without sharing the proceeds with Ateeq, Ateeq sued Najor and Attiq alleging undue influence, conspiracy to commit fraud, violation of a trust, and constructive fraud. By special verdict, the jury awarded Ateeq general damages of $139,056 and punitive damages of $265,000 against Najor but nothing against Attiq. Further, the jury found that three land parcels should be equally divided among Ateeq, Najor and Attiq. In particular, the jury found by special verdict that the confidential relationship between Ateeq, Najor and Attiq ended in February 1981, that Najor threatened to have Ateeq deported if he contested the attempted accountings, and that Ateeq actually believed such threats would be carried out. The court entered judgment in accordance with the special verdict, and it subsequently denied Najor's motion for judgment based on the statute of limitations.

## II

 Najor asserts the court erred when it denied his motion for a defense judgment upon the grounds the statute of limitations had expired prior to the filing of Ateeq's complaint. He suggests evidence that Ateeq made subsequent requests for accountings and consulted an immigration attorney more than three years prior to filing his action proves he should not be estopped upon the basis of his threats. Since we cannot reweigh the evidence on appeal, we conclude the court did not err in finding Najor was estopped from pleading the defense of the statute of limitations.

As we noted above, the jury found by special verdict that Najor threatened to have Ateeq deported if he contested any of the attempted accountings and that Ateeq actually believed such threats would be carried out. After the trial and the jury's special verdict, the court heard and considered Najor's motion for judgment based upon the defense of the statute of limitations. The court found that Ateeq believed he could be put to death in Iraq for smuggling funds out of the country, that Najor converted $31,300 of Ateeq's funds to

his own use, that Najor made two untruthful accountings to Ateeq in 1979 and 1981, that Ateeq is not and was not at the time of the trial an American citizen, that Ateeq confronted Najor about the accounting and he wrongfully, unlawfully, oppressively, and maliciously threatened to have Ateeq deported if he contested the accountings, and that Ateeq believed he would be deported for smuggling money out of Iraq. Based upon its factual findings, the court held Najor was estopped to plead the statute of limitations. Although the court noted, absent duress, Ateeq should have filed suit no later than February 1985, the court concluded duress occurred when Najor wrongfully threatened to have Ateeq deported. It concluded Ateeq reasonably believed Najor could carry out his threats of deportation. Finally, the court concluded Ateeq's forbearance to bring suit under the circumstances was reasonable and the duress continued up to and after June 2, 1985 (i.e., three years before Ateeq filed this action). The court admitted there appeared to be a lack of California case law precedent in support of its holding of estoppel by duress, but relied in part upon a Georgia case (*Bank of Penfield* v. *Colclough* (1922) 154 Ga. 222 [114 S.E. 33]) which tolled the statute of limitations where threats were made to have the plaintiff's son arrested.

Like the trial court, we find no specific California case which holds a defendant may be estopped from pleading the defense of the statute of limitations due to threats made by the defendant and causing duress upon the plaintiff. However, there is ample California case law on the principles of equitable estoppel in general which supports applying estoppel in this context. As one court stated: "The doctrine of equitable estoppel is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estopped from obtaining the benefits of his misconduct. [Citation.] ▪ Under appropriate circumstances equitable estoppel will preclude a defendant from pleading the bar of the statute of limitations where the plaintiff was induced to refrain from bringing a timely action by the fraud, misrepresentation or deceptions of defendant. [Citations.] A defendant should not be permitted to lull his adversary into a false sense of security, cause the bar of the statute of limitations to occur and then plead in defense the delay occasioned by his own conduct. [Citations.]" (*Kleinecke* v. *Montecito Water Dist.* (1983) 147 Cal.App.3d 240, 245 [195 Cal.Rptr. 58].) ▪ As Justice Holmes observed, "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." (*New York Cent. & H.R.R. Co.* v. *Kinney* (1922) 260 U.S. 340, 346 [67 L.Ed. 294, 296-297, 43 S.Ct. 122].) Further, "[s]tatutes of limitations are not so rigid that under certain circumstances principles of equity and justice will not allow them to be extended or tolled." (*Kleinecke* v. *Montecito Water Dist.*, *supra*, 147 Cal.App.3d at p. 247.)

"It is well settled that where delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations]. [Citations.]" (*Gaglione* v. *Coolidge* (1955) 134 Cal.App.2d 518, 527 [286 P.2d 568]; see also *Rupley* v. *Huntsman* (1958) 159 Cal.App.2d 307, 313 [324 P.2d 19]; *Langdon* v. *Langdon* (1941) 47 Cal.App.2d 28, 32 [117 P.2d 371]; *Industrial Indem. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 689 [252 P.2d 649]; *Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 434 [224 P.2d 702, 24 A.L.R.2d 1403].) As one court observed: "The equitable doctrine of estoppel *in pais* is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations. [Citations.] A person by his conduct may be estopped to rely on the statute. Where the delay in commencing an action is induced by the conduct of the defendant, it cannot be availed of by him as a defense. [Citations.]" (*Industrial Indem. Co.* v. *Ind. Acc. Com.*, *supra*, 115 Cal.App.2d at p. 689, italics in original; see also *McDonagh* v. *Gourneau* (1969) 2 Cal.App.3d 1033, 1039 [83 Cal.Rptr. 63].)

The facts in this case, as found by the jury and court below, clearly establish that Najor repeatedly threatened to deport Ateeq if he caused any problems with Najor's accountings of their dealings. Such repeated threats were reasonably believed by Ateeq and he was under duress from them at least until June 2, 1985, causing him to delay filing his lawsuit against Najor which otherwise should have been filed by February 1985. A defendant should not benefit from his own wrongdoing in preventing a plaintiff from instituting a lawsuit against him. (*Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231-232 [153 P.2d 325].) Accordingly, Najor cannot take advantage of his own wrongdoing in threatening to have Ateeq deported if he questions his accountings of their dealings, which undoubtedly would include the filing of a lawsuit against Najor as to their dealings. (Cf. *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 116 [206 Cal.Rptr. 476].) The court properly estopped Najor from availing himself of the defense of the statute of limitations, since Najor cannot be permitted to wrongfully cause a delay in the filing of Ateeq's lawsuit and, at the same time, seek to benefit from such delay. Such circumstances clearly fall within established principles of equitable estoppel.

Najor asserts that duress is fraud for purposes of applying Code of Civil Procedure[1] section 338, subdivision (d), and cites *Leeper* v. *Beltrami* (1959) 53 Cal.2d 195, 207 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803] as support. However, section 338 merely sets forth the applicable period of limitations for actions based on fraud. It does not apply to situations, such as

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

the one at hand, where the duress imposed is not a part of the underlying cause of action, but is rather a separate wrongful action by a defendant intended to delay a filing of a lawsuit by a plaintiff. The court's finding of equitable estoppel on grounds of duress was not based on fraud or concealment of the underlying cause of action, nor was it based on any confidential relationship between Najor and Ateeq which was found to have ended in 1981 or 1982. Rather, it was based on independent actions consisting of Najor's threats to have Ateeq deported if he caused problems regarding his accountings of their dealings. Thus, Najor's argument that section 338, subdivision (d), applies is meritless, and we need not discuss the inapposite cases he cites in support of this position.

Najor next asserts Ateeq cannot rely on equitable estoppel to avoid the statute of limitations, because Ateeq failed to plead in his complaint the specific facts of duress resulting from the deportation threats. *If* the facts alleged in Ateeq's complaint clearly show the statute of limitations has run, then he may be required to affirmatively and specifically plead facts supporting estoppel of the defense of the statute of limitations. (See, e.g., *Bank of America* v. *Williams* (1948) 89 Cal.App.2d 21, 25 [200 P.2d 151]; *Muraoka* v. *Budget Rent-A-Car, Inc., supra,* 160 Cal.App.3d at p. 115.) However, Ateeq's complaint did not clearly indicate the statute of limitations would have run based upon the facts alleged in the complaint. Accordingly, Ateeq was not required to specifically plead the deportation threats at the initial stage of filing his complaint. In fact, Ateeq may not have necessarily known the statute of limitations was an issue until Najor raised it as an affirmative defense in his answer to Ateeq's complaint. Since Ateeq timely raised the issue of estoppel due to the deportation threats in response to Najor's motion for a defense judgment based on the statute of limitations, we conclude Ateeq was not precluded from relying on equitable estoppel for failure to specifically plead it in his complaint.

Najor also asserts there was insufficient evidence in support of the threats of deportation and Ateeq's reasonable belief of such threats. He points out that he denied at trial making any such threats to Ateeq, and that there is no evidence of any threats in 1988 when Ateeq filed his complaint. However, the testimony of three individuals supported the finding that such threats were made, and that such threats continued past June 2, 1985 (i.e., within three years of the filing of Ateeq's complaint). Najor also argues Ateeq knew of the facts giving him a cause of action against him as early as 1981, but such argument is irrelevant as this is not a fraudulent concealment case. Najor also points out that Ateeq had consulted one or two immigration attorneys, so he could not have reasonably believed he could be deported by

Najor. However, we cannot reweigh the evidence as there is sufficient evidence to show Ateeq reasonably believed Najor could have him deported. For example, the record shows Najor was an important figure in the Iraqi community and was a friend of the Iraqi Secretary of State.

Najor also contends the jury's special verdict failed to specifically conclude Ateeq was reasonable in believing Najor would have him deported and that threats continued past June 2, 1985. However, Najor failed to object to the content of the special verdict form in these respects, so he is deemed to have waived such objections. In any event, the trial court made the necessary factual findings when it denied Najor's motion for a defense judgment based upon a defense of the statute of limitations.

■ Finally, Najor meritlessly asserts he cannot be equitably estopped from pleading the defense of the statute of limitations, because Ateeq should be prevented by laches from pursuing his action. The trial court specifically rejected this contention when it denied Najor's motion for judgment based on the statute of limitations. The court stated: "The defense claim of [laches] is without merit. The prejudice claimed is for the loss of records. These were bank records under the control of Najor. Najor knew there was a dispute as early as 1979. He cannot now come in, after his deport[at]ion threats caused the delayed filing, and claim his failure to keep bank records has prejudiced his case. Najor should not be allowed to complain about what his wrongful conduct caused." Laches, like estoppel, is founded in equitable principles. Under the circumstances of this case, we conclude the court did not err in refusing to apply the doctrine of laches in this case. The delay was caused by Najor's own wrongdoing in the form of threats to deport Ateeq. He cannot now claim he is unfairly prejudiced due to the delay which he caused. If he did not retain all of the records necessary to adequately defend himself at trial, this is a result of his own wrongful actions and equity will not condone his wrongdoing by allowing him to plead laches.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1351.

## DISPOSITION

The judgment is affirmed.

Huffman, J., and Nares, J., concurred.

A petition for a rehearing was denied June 1, 1993.