Filed 6/4/20

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>TIMOTHY MARTEN et al.,<br><br>     Defendants and Respondents. | A153427<br><br>(City & County of San<br> Francisco Super. Ct.<br> No. CPF-11-511337) |

Plaintiff Jane Doe sued defendant Timothy Marten for damages sustained after he performed plastic surgery on her face and neck. At trial, the court granted defendant's motion for nonsuit on plaintiff's claim for medical battery, but submitted her medical malpractice claim to the jury. The jury rendered a verdict finding defendant liable and awarded plaintiff over $6.3 million in damages. Following the verdict, the trial court found the malpractice claim time-barred and dismissed the action. Plaintiff appeals the judgment of dismissal and the granting of nonsuit.

In the published portion of the opinion we conclude plaintiff's medical malpractice claim was not time-barred because defendant's conduct actually and reasonably induced plaintiff to refrain from filing a timely action. In the

---

\*     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B and C of the Discussion.

unpublished portion we reject plaintiff's remaining contentions and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2007, plaintiff first met with defendant for a consultation regarding a bump on her nose. Defendant told plaintiff he did not "do noses," but he explained he worked on "faces and rejuvenations" and showed her "before and after" photographs of other people.

On October 25, 2007, after consulting with a different plastic surgeon named Dr. Daniel, plaintiff returned to defendant and said she was considering a possible "forehead lift and possibly some youthfulness around [her] eyes" and wanted to "get more information." Defendant discussed "maintenance" and "rejuvenation," and at that point plaintiff said she "wouldn't want" fat injections penetrating her face if defendant were to work on her eyes. Defendant told plaintiff that if she was going to have work performed on her eyes and forehead, she should also get a facelift and neck lift, because otherwise she would look "lopsided."

On November 3, 2007, plaintiff emailed defendant saying she wanted to schedule "upper eye work" but was "back on the fence" concerning a face and neck lift. During an office visit on November 12, which occurred after additional phone and email communications between the two, defendant discussed the risks and side effects of a face and neck lift with plaintiff. On November 13, plaintiff informed defendant's office by phone that she wanted to do "all of the work," i.e., the eye work and a face and neck lift. That same day, she signed a consent form authorizing defendant to perform a "face and neck lift, minor forehead lift, upper eye lift, lower eye lift."

Just before the scheduled surgery on November 16, 2007, plaintiff initialed a handwritten notation for "minor facial fat injections" on the

2

consent form she previously signed. Defendant then performed the surgery on plaintiff's face and neck. It turns out plaintiff was unhappy with the results of the surgery. On March 20, 2008, plaintiff had her last follow-up visit with defendant and at that point was contemplating litigation against him.

On June 20, 2008, plaintiff sent defendant a letter stating she was considering suing him and demanded that he preserve all documents, paper or electronic files, and photos relating to her care.

On November 13, 2008, plaintiff's attorney served defendant with a written demand for arbitration "[p]ursuant to the Physician-Patient Arbitration Agreement . . . entered into between [defendant and plaintiff] . . . for any and all claims for injuries and damages arising out of the treatment, care, procedures, examination and/or other conduct related to this patient." The demand attached a copy of an arbitration agreement that plaintiff had found in her files. The agreement expressly stated that by signing the agreement, signatories agreed to having "any issue of medical malpractice decided by neutral arbitration" and to "giving up [the] right to a jury or court trial." The agreement contained plaintiff's signature and an illegible physician's signature that plaintiff assumed was defendant's.

On January 20, 2009, defendant's counsel responded by letter to plaintiff's arbitration demand without questioning the origin of the arbitration agreement or disputing that defendant had signed the agreement. Instead, counsel's response letter stated: "Please be advised that we have selected David Sheuerman as our arbitrator in this matter. We also make a demand for a neutral third party arbitrator in this matter."

March 20, 2009 was later determined by the trial court to be a significant date in the timeline of this case, as it marked the passage of one

3

year from the date plaintiff indicated she first contemplated suing defendant (March 20, 2008). As will be discussed, the trial court found the applicable one-year statute of limitations ran no later than March 20, 2009. (Code Civ. Proc., § 340.5)

In May 2009, as part of the pending arbitration proceeding, defendant subpoenaed and obtained the records of Dr. Daniel, whom plaintiff earlier consulted for nose surgery. Located within Dr. Daniel's records was a signed arbitration agreement between plaintiff and Dr. Daniel. It turns out plaintiff had served a copy of this agreement on defendant, but unlike the copy that was in plaintiff's possession, the agreement found within Dr. Daniel's records reflected his office stamp.

Nearly three years later, during plaintiff's deposition on February 7, 2012, defendant's counsel for the first time confronted plaintiff with the arbitration agreement obtained from Dr. Daniel and asserted defendant's refusal to continue with the arbitration. Upon examining the arbitration agreement signed by Dr. Daniel, plaintiff did not dispute that the arbitration agreement she served on defendant on November 13, 2008 had not been signed by defendant. The next day (February 8), defendant prevailed in obtaining a stay of the arbitration.

On February 10, 2012, plaintiff filed the complaint in the instant action, alleging causes of action for medical malpractice and medical battery. The complaint also alleged facts supporting plaintiff's claims that her action was timely filed under the doctrines of equitable tolling and equitable estoppel.

During the course of the lawsuit, defendant filed a demurrer and two motions for summary judgment, all of which contended plaintiff's medical malpractice claim was barred by the one-year limitations period in Code of

4

Civil Procedure section 340.5.  The trial court overruled the demurrer and denied both summary judgment motions.  In essence, the court found there were triable issues as to whether equitable tolling or equitable estoppel disallowed the statute of limitations defense.  The matter then proceeded to a jury trial.

Prior to trial and on plaintiff's motion, the trial court imposed monetary sanctions against defendant and indicated it might give willful suppression of evidence instructions after hearing evidence that defendant destroyed electronically stored information and obstructed plaintiff's electronic discovery rights.

At trial, the parties presented evidence relevant to defendant's alleged malpractice and medical battery, plaintiff's claimed damages and allegations of falsified evidence, and the loss of potentially relevant evidence.  The parties also presented evidence pertaining to the statute of limitations and plaintiff's equitable tolling and equitable estoppel claims.  After the close of evidence, the trial court granted defendant's motion for nonsuit on the medical battery claim, but allowed the malpractice claim to go to the jury. After several days of deliberation, the jury returned a verdict awarding plaintiff $3,676,780 for past and future economic losses and $3,000,000 for past and future non-economic losses, and found plaintiff was five percent contributorily negligent.  The jury also specifically determined that plaintiff's harm occurred before February 10, 2011, i.e., more than one year before she filed her complaint on February 10, 2012.

Thereafter the trial court turned to the statute of limitations issue. After considering the parties' briefing, the court issued a statement of decision finding that the doctrines of equitable tolling and equitable estoppel did not apply on the facts of the case and that the action was therefore time-

5

barred under Code of Civil Procedure section 340.5. The court ordered the action dismissed, resulting in the negation of the jury's multi-million dollar award.

## DISCUSSION

On appeal, plaintiff does not challenge the trial court's finding that equitable tolling does not apply in this case. She does, however, maintain that defendant should have been found equitably estopped from asserting the one-year statute of limitations and that the trial court erred in concluding otherwise. Plaintiff additionally contends that nonsuit was erroneously granted on her medical battery cause of action. We address these issues in order.

### A. Equitable Estoppel

As relevant here, Code of Civil Procedure section 340.5 provides the time for commencement of a medical malpractice action "shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."[1]

In appropriate cases, a defendant may be equitably estopped from asserting a statutory limitations period. (See *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383–384 (*Lantzy*).) " ' "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely

---

[1] Neither the three-year statutory period, nor the restrictive statutory provisions for equitable tolling of that period, are at issue here.

6

upon the conduct to his [or her] injury." ' " (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37, quoting *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 489.)

In the statute of limitations context, equitable estoppel may be appropriate where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit. (See *Lantzy*, *supra*, 31 Cal.4th at p. 385.) The requisite act or omission must involve a misrepresentation or nondisclosure of a material *fact* bearing on the necessity of bringing a timely suit. (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1149–1152 (*Vu*).)

Notably, however, even a defendant who is ignorant or mistaken as to the real facts may be equitably estopped if the defendant was " ' "in such a position that he [or she] *ought* to have known" ' " the true facts. (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 566 (*Krolikowski*).) This means that an estoppel may be created where the defendant harbored no intent to mislead and did not engage in actual fraud or bad faith. (*Lantzy*, *supra*, 31 Cal.4th at p. 384; *Holdgrafer v.Unocal Corp.* (2008) 160 Cal.App.4th 907, 925 (*Holdgrafer*).) Rather, it is enough that the defendant's conduct "induced" the plaintiff to delay commencement of an action. (*Benner v. Industrial Acc. Commission* (1945) 26 Cal.2d 346, 349–350; *Vu*, *supra*, 26 Cal.4th at pp. 1152–1153; *Holdgrafer*, at p. 925.) A plaintiff has "a reasonable time in which to bring [the] action after the estoppel has expired." (*Regus v. Schartkoff* (1957) 156 Cal.App.2d 382, 387.)

"The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence. [Citation.] When the evidence is not in conflict and is susceptible of only one

reasonable inference, the existence of an estoppel is a question of law." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 (*Driscoll*).) Thus, whether a plaintiff reasonably relied on a nondisclosure of a material fact is a question of fact for the trial court "unless reasonable minds could reach only one conclusion based on the evidence." (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 187 (*Superior Dispatch*).)

Applying the foregoing principles, we assess whether, viewing the evidence and the inferences therefrom in the light most favorable to defendant, there was substantial evidence upon which the trial court could reasonably have concluded that no estoppel should lie.

Here, the undisputed facts are as follows. As found by the trial court, plaintiff's claim for medical malpractice accrued no later than March 20, 2008. On November 13, 2008, plaintiff served defendant with an arbitration demand attaching the arbitration agreement that plaintiff believed had been signed by defendant. On January 20, 2009, which was within the one-year limitations period, defendant responded to plaintiff's arbitration demand by selecting his own arbitrator and making a demand for a neutral third party arbitrator, without questioning the validity of the arbitration agreement or its binding effect on defendant. Defendant assumed, erroneously it turns out, that he signed the arbitration agreement plaintiff had provided him, even though he acknowledged that he did not use arbitration agreements in his practice and that it was "very rare" for a patient to ask him to sign an arbitration agreement. Had defendant denied signing or being a party to the arbitration agreement in responding to plaintiff's arbitration demand, plaintiff would have commenced an action in court to protect her rights. Indeed, plaintiff filed her complaint three days after defendant first claimed he was not a party to the arbitration agreement.

The undisputed facts give rise to only one reasonable inference: plaintiff did not realize that defendant had not signed the subject arbitration agreement when she served her arbitration demand, and defendant's failure to question or object to her arbitration demand, coupled with his written response indicating his express willingness to participate in arbitration proceedings, led plaintiff to actually and reasonably believe that she and defendant would resolve their dispute through arbitration and that commencing a legal action was unnecessary. Put another way, plaintiff did not timely file a lawsuit because she reasonably relied on defendant's response to her arbitration demand, and the only reasonable conclusion to be drawn from the record is that defendant must be deemed estopped from relying on a statute of limitations bar. (*Driscoll*, *supra*, 67 Cal.2d at p. 305.)

In rejecting plaintiff's claim of equitable estoppel, the trial court identified the following three circumstances: (1) defendant did not conceal information about the arbitration agreement; he merely responded to plaintiff's arbitration demand by selecting an arbitrator; (2) plaintiff was an attorney and was at all times represented by counsel who had a duty to confirm the validity of the arbitration agreement; and (3) plaintiff and her counsel were in the best position to know that another doctor may have signed the arbitration agreement at issue. In the trial court's view, application of equitable estoppel was inappropriate because the foregoing circumstances were such that plaintiff could not rely on her ignorance of the facts surrounding the arbitration agreement. We are not persuaded.

First of all, that defendant did not actively conceal information or intend to mislead plaintiff is of no consequence on this record. (Accord, *Lantzy*, *supra*, 31 Cal.4th at p. 384; *Holdgrafer*, *supra*, 160 Cal.App.4th at p. 925.) The salient fact is that defendant responded to plaintiff's arbitration

9

demand in a manner so as to induce plaintiff to reasonably and in good faith proceed with arbitration instead of filing a legal action.  (See *Kleinecke v. Montecito Water Dist.* (1983) 147 Cal.App.3d 240, 246 (*Kleinecke*).)

Second, we have no quarrel with case law observing that "the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.' " (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316; *May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1339.)  Those decisions, however, were emphasizing the settled principle that attorneys are charged with knowledge of the law (*Steinhart*, at pp. 1316–1317; *May*, at p. 1339), and they do not support rejection of estoppel where, as here, the only mistake was one of fact.  (See, e.g., *Superior Dispatch, supra,* 181 Cal.App.4th at p. 191 & fn. 7; cf. *Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1497–1499 [distinguishing between mistakes of law and mistakes of fact, and rejecting estoppel where plaintiff's attorney operated under opponent's misrepresentation of law].)  In this case, neither plaintiff's representation by counsel nor her own attorney status had any bearing on the estoppel question once defendant expressly acquiesced to the mistaken arbitration demand without questioning the arbitration agreement sent to him.

Moreover, when considering the doctrine of equitable estoppel in the statute of limitations context, "we are more concerned with balancing the equities than with highlighting the negligence of [plaintiff's] counsel." (*Cuadros v. Superior Court* (1992) 6 Cal.App.4th 671, 678.)  In *Cuadros*, for instance, the appellate court issued a peremptory writ of mandate after the trial court had denied the plaintiff's motion to amend her complaint to add additional defendants after the statute of limitations had run.  (*Id.* at p. 678.)  While acknowledging that the plaintiff's counsel could have done more to

10

ascertain ownership of the vehicle involved in the plaintiff's accident, the court concluded it was "entirely reasonable" under the circumstances of the case for counsel to rely on the defendants' acts and statements in mistakenly concluding the proper parties had been named in suit. (*Id*. at pp. 677–678; see also *Kleinecke, supra*, 147 Cal.App.3d at p. 248 [even if the plaintiff's counsel by the exercise of due diligence could have learned he named the incorrect party as defendant, the equities tipped in favor of the plaintiff and against application of the statute of limitations because defense counsel took action that caused the plaintiff's counsel to reasonably assume he had served the correct party].)

The circumstances here compel a similar result. Whether or not plaintiff and her counsel could or should have ascertained at the outset that a doctor other than defendant signed the subject arbitration agreement, it remains the case that defendant acted as if he actually signed it. There appears no question that defendant's response to plaintiff's arbitration demand led her and her counsel to reasonably believe that filing a lawsuit was unnecessary because the malpractice dispute would be resolved through arbitration. "When all the circumstances are considered, the equities overwhelmingly favor [plaintiff]." (*Cuadros, supra*, 6 Cal.App.4th at p. 678.)

In urging affirmance of the trial court's decision, defendant claims substantial evidence supports its holding that defendant did not know and was in no position to know that plaintiff's arbitration demand concerned an agreement she had signed with another physician. Although we question whether the court's decision made or even implied such a holding, case law recognizes that a party who was " ' "ignorant or mistaken as to the real facts" ' " may nevertheless be estopped where that party " ' "was in such a position that he *ought* to have known [the real facts], so that knowledge will

11

be imputed to him." ' " (*Krolikowski*, *supra*, 24 Cal.App.5th at p. 566 [rejecting estoppel where court found imputation of knowledge inappropriate].)  Here, it strains credulity to suggest that defendant was in no position to know or suspect he was not a party to the agreement.  After all, he testified that he did not use arbitration agreements in his practice and that it was "very rare" for a patient to ask him to sign an arbitration agreement.  So when plaintiff presented him with an arbitration agreement containing an illegible physician signature, he had sufficient reason to question whether he was a party to the agreement.  Under these circumstances, we have no difficulty concluding that defendant was in a position to know he did not sign the agreement and that substantial evidence did not support rejection of estoppel.

Finally, it bears emphasis that the purpose of a statute of limitations is to protect a defendant against prosecution of stale claims and to stimulate a plaintiff to assert fresh claims in a diligent fashion.  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395.)  Here, plaintiff did not present defendant with a stale claim.  Less than a year after her surgery, plaintiff notified defendant in writing that she was considering suing him and expressly demanded that he preserve all documents and paper and electronic files relating to her care.  Plaintiff likewise made her arbitration demand within a year of her surgery, and she filed an action in court a mere three days after defendant first challenged the arbitration agreement.  On this record, the equities do not support application of a time bar on staleness grounds.

In sum, we conclude the trial court erred in determining that plaintiff's medical malpractice action was time-barred.  Based on the undisputed facts,

defendant must be deemed equitably estopped from asserting a statute of limitation defense.[1]

## B. Nonsuit on Medical Battery Cause of Action

Plaintiff additionally contends nonsuit on her medical battery cause of action was erroneously granted and must be reversed. As plaintiff observes, damages for medical battery are not subject to the limitations on non-economic damages for medical malpractice. (Civ. Code, § 3333.2; *Perry v. Shaw* (2001) 88 Cal.App.4th 658, 668–669.)

As relevant here, the distinction between medical malpractice and medical battery turns on the patient's consent or lack thereof. When a doctor performs an operation to which the patient consents, but the patient has not given an *informed* consent because the doctor failed to disclose sufficient information about the risks inherent in the operation, then the action "should be pleaded in negligence," i.e., medical malpractice. (*Cobbs v. Grant* (1972) 8 Cal.3d 229, 240–241 (*Cobbs*).) Conversely, a typical medical battery occurs when a doctor performs a procedure without securing the patient's consent for that procedure. (*Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.* (2003) 107 Cal.App.4th 1260, 1266 (*Conte*).) Thus, "[w]here a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." (*Cobbs*, at p. 239; *Conte*, at p. 1267.)

---

[1] In light of our conclusion, we need not and do not reach plaintiff's belated contention—raised for the first time on appeal—that her action is not time-barred because, as a matter of law, the timely service of an arbitration demand is the functional equivalent of the commencement of an action that satisfies Code of Civil Procedure section 340.5.

Here, the jury awarded plaintiff over $6.3 million on her medical malpractice cause of action after finding she did not give *informed* consent for the surgical procedures defendant performed. Although the parties do not dispute that finding, the question here is whether there was sufficient evidence that defendant committed medical battery by rendering treatment without plaintiff's consent.

The law applicable to nonsuits is settled. " ' "[C]ourts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper. The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .' " [Citation.] The same rule applies on appeal from the grant of a nonsuit. [Citation.]' " (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347.)

Plaintiff urges reversal of the nonsuit because there was a factual question concerning her consent to fat injections in different parts of her face. Specifically, she contends she consented to fat injections only beneath her eyes, but defendant had also injected fat around the sides of her nose, mouth, and in her forehead.

The evidence at trial was insufficient to establish that defendant performed a procedure that was substantially different from the procedure she ultimately consented to. Plaintiff testified that she told defendant she

14

did not want fat injections penetrating her face when they were initially discussing work on her eyes and forehead, and that defendant assured her he could inject the fat beneath her eyes by pulling the skin back and making injections inside of her skin. But plaintiff further testified that their discussions moved beyond such work to the possibility of additional procedures. As plaintiff acknowledged, defendant cautioned that if she were to have work performed on her eyes and forehead, she should also get a facelift and neck lift to avoid looking "lopsided." Although plaintiff told defendant she was "on the fence" concerning a face and neck lift, she admitted she changed her mind after defendant explained the risks and side effects of a face and neck lift. Plaintiff thereafter signed a consent form authorizing defendant to perform a "face and neck lift, minor forehead lift, upper eye lift, lower eye lift." She also admitted that, during one of her pre-surgical appointments, defendant explained that he would need to "put fat back in" during forehead and eyelid surgery "so it didn't look so hollow." Significantly, although plaintiff claimed she "had no understanding" prior to the surgery that she was "ever going to get facial fat injections to anyplace other than [her] eyes," just before her surgery she initialed a handwritten notation on the November 13 consent form for "minor facial fat injections" without restricting the location or purpose of the injections. Plaintiff testified that, once she initialed that notation, she only told defendant *not* to "take any fat out of [her] face." Following the surgery, an email sent by plaintiff disclosed her knowledge that defendant had injected fat nearby her mouth, but she did not complain that those injections exceeded the scope of her consent until later when she became dissatisfied about the results of the surgery.

15

Moreover, defense witness Dr. Toth offered uncontradicted medical expert testimony at trial that defendant's injection of fat for plaintiff's face and neck lift was "a very small amount" and "reasonable." Contrary to plaintiff's suggestion otherwise, Dr. Toth's testimony on this point is properly considered because issues concerning the quantity of facial fat injections used during such lifts are within the knowledge of experts only and not within the common knowledge of laypeople. (See *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 844.)

In sum, plaintiff's own testimony established she ultimately consented in writing to "minor facial fat injections" as part of her face and neck lift, and the only condition she expressed upon giving that consent was that defendant must not take fat out of her face. Plaintiff, moreover, offered no expert testimony countering Dr. Toth's medical opinion that the facial fat injected during plaintiff's surgery was indeed minor in amount for the type of procedure performed. Accordingly, viewing the evidence and all legitimate inferences in a manner most favorable to plaintiff, and disregarding defendant's conflicting evidence, we conclude the evidence was insufficient to establish that defendant performed a procedure substantially different than the one plaintiff authorized. (See *Cobbs*, *supra*, 8 Cal.3d at p. 239; *Conte*, *supra*, 107 Cal.App.4th at p. 1267.) On this record, the grant of nonsuit on the medical battery claim was proper.

### C. Plaintiff's Request Pursuant to Code of Civil Procedure Section 170.1, Subdivision (c)

At oral argument, plaintiff requested that in the interests of justice this court direct reassignment to a different trial judge in the event we reverse the judgment and remand this matter for further proceedings.

Code of Civil Procedure, section 170.1, subdivision (c), provides: "At the request of a party . . . an appellate court shall consider whether in the

16

interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." Our authority to disqualify a judge, however, must be exercised "sparingly, and only when the interests of justice require it." (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1079.) "Mere judicial error does not establish bias and normally is not a proper ground for disqualification." (*Ibid*.)

Here, plaintiff offers no basis for concluding that the interests of justice require disqualification of the judge whose orders we are reversing in part on appeal. Accordingly, plaintiff's request is denied.

## DISPOSITION

The judgment is reversed to the extent it set aside the jury's verdict and award of damages on plaintiff's medical malpractice cause of action and dismissed the action. The matter is remanded to the trial court with directions to enter a new judgment reflecting the jury's verdict and award. The trial court may conduct additional proceedings consistent with this decision, which may include addressing any request for interest on the jury's award. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.




A153427

**Jane Doe v. Timothy Marten et al.**

(A153427)

Trial Court: City & County of San Francisco

Trial Judge: Hon. Suzanne R. Bolanos

Attorneys:

Law Office of Herb Fox and Herb Fox for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Cassidy C. Davenport, Zena Jacobsen; Craddick, Candland & Conti, John H. Dodd, and Mary Gannon-McMurray for Defendant and Respondent.