[Civ. No. 66784. Second Dist., Div. Six. Sept. 22, 1983.]

DAVID KLEINECKE, Plaintiff and Appellant, v.
MONTECITO WATER DISTRICT, Defendant and Respondent.

COUNSEL

Carroll Barrymore for Plaintiff and Appellant.

Price, Postel & Parma, J. Terry Schwartz and William W. Watts for Defendant and Respondent.

OPINION

GILBERT, J.—Plaintiff David Kleinecke (Kleinecke) brought an action against defendant Montecito Water District (Water District) to quiet title and obtain a permanent injunction to remove water pressure regulators and housings from his land. He appeals from a summary judgment in favor of Water District based on the running of the statute of limitations.

We conclude that Water District is estopped to raise the bar of the statute of limitations.

*Facts*

Declarations filed on behalf of Kleinecke and Water District disclose the following scenario: beginning in 1978, counsel for Kleinecke (plaintiff's counsel) and counsel for Water District (defense counsel) had some "contact" with each other concerning a dispute over Water District's easement on Kleinecke's property but they did not resolve it. Therefore, on November 7, 1980, Kleinecke filed a complaint naming as defendants Montecito Sanitary District (Sanitary District) and various Does.

The complaint alleged that Sanitary District exceeded its easement for water pipelines on Kleinecke's property by constructing pressure control valves surrounded by six-foot industrial fences. Kleinecke sought, among other things, an order requiring Sanitary District to remove the valves.

Kleinecke's complaint stated the facts with meticulous care. It did however suffer from one significant infirmity. It named the wrong party as a

defendant. The complaint should have named Water District rather than Sanitary District which was served on November 19, 1980.

Sanitary District and Water District are separate and distinct municipal corporations. Sanitary District was formed under the provisions of Health and Safety Code section 6400 et seq. (the Sanitary District Act of 1923) while Water District was formed under the provisions of Water Code section 30000 et seq. (the County Water District Act).

When an attorney serves the wrong party with a summons and complaint, he usually receives a telephone call advising him of the error. Counsel for plaintiff did not receive such a call. This was one of those exceedingly rare situations where by a cruel twist of fate counsel for Sanitary District was also counsel for Water District. Defense counsel learned of Kleinecke's error when he received word from Water District that Sanitary District had been mistakenly served with the complaint.

Imbued with a sense of duty to his client and possessing the instincts of a litigator, he informed Water District there could be a statute of limitations defense. He then told Water District what its options were: preserve the statute of limitations defense, or notify Kleinecke of his error. He next asked Water District what it wished him to do. We will not prolong the suspense. Water District told him to assume a passive posture and preserve the statute of limitations defense, and that is what he did—well not quite. He did file an answer, not one on behalf of Water District, however, but rather one on behalf of Sanitary District, the wrong party served.

In the meantime, plaintiff's counsel was treading water, waiting for Sanitary District's answer. When he did not receive it by January 12, 1981, he wrote to defense counsel to inquire about it. Defense counsel did not answer the letter because he had answered the complaint and assumed plaintiff's counsel would soon receive it or learn of it. He had actually sent a copy of his answer to plaintiff's counsel's street address rather than the post office box which appeared on the complaint along with his street address. In his declaration, plaintiff's counsel states that mail is not delivered to his street address.

Receiving no answer from defense counsel, plaintiff's counsel wrote him again on February 19, 1981, to inquire about the answer. Once again, he was ignored. Finally, he learned that the answer had been filed when he tried to enter a default on March 1, 1981. He, however, was still unaware of the dangerous undercurrents around him because the answer generally denied the allegations in the complaint and failed to mention that Sanitary

District was the wrong party served. When plaintiff's counsel finally learned of this mistake through answers to interrogatories in May 1981, after the statute of limitations had run on February 29, 1981, he asked defense counsel to stipulate to the filing of an amended complaint, properly naming Water District as a defendant. This time defense counsel answered him. He said, "No."

Plaintiff's counsel looked for a way out of the deep water. On May 14, 1981, he filed a motion under Code of Civil Procedure section 473, seeking to amend his complaint to name Water District as a defendant on the ground that he had mistakenly named Sanitary District. The trial court granted his motion even though Water District argued that plaintiff was seeking not merely to correct a misnomer as to a defendant but to bring in an entirely new party after the statute of limitations had run. (*Chitwood* v. *County of Los Angeles* (1971) 14 Cal.App.3d 522, 525 [92 Cal.Rptr. 441]; *Stephens* v. *Berry* (1967) 249 Cal.App.2d 474, 478-479 [57 Cal.Rptr. 505].)

Kleinecke filed his amended complaint and Water District filed its answer along with a cross-complaint to quiet title in a prescriptive easement against Kleinecke. It also filed a summary judgment motion based on the bar of the statute of limitations because Kleinecke's notice of motion to amend the complaint occurred more than five years following completion of all work by Water District.

The attorney in plaintiff's counsel's office who drafted the complaint alleged in his declaration that at the time he drafted the complaint, he did not know that Sanitary District and Water District were separate entities. He believed that since the time of the easement grant Water District had reorganized and had changed not only its legal status but also its name to Sanitary District. He further presumed that some transfer of easement rights had been made, making Sanitary District the successor entity. It was not until he received answers to interrogatories propounded to Sanitary District in early May 1981 that he learned that Water District changed its name in 1979 from Montecito County Water District to Montecito Water District, and that Sanitary District was a separate legal entity and not the direct successor to the former Montecito County Water District.

The trial court reluctantly granted the summary judgment motion on the grounds that the statute of limitations had run on February 29, 1981.[1] We agree with the trial judge's observations that "fundamental fairness would dictate that plaintiff should be entitled to relief under § 473 of the Code of

---

[1]Other issues raised in the summary judgment motion were not considered, because of the ruling on the statute of limitations.

Civil Procedure." His further observation, however, that "existing case law holds otherwise" is no longer true.

We acknowledge that *Wright* v. *Redwood Theatres, Inc.* (1942) 49 Cal.App.2d 403 [121 P.2d 756], on which the trial court relied, would compel a dismissal in the instant case. In *Wright,* plaintiff brought an action for personal injury against Redwood Theaters, Inc., when she should have named National Theater Syndicate of California. The corporations had common officers and maintained joint offices with the same telephone numbers. A major portion of the stock of each company was owned by the same individual. As in the instant case, the attorney who represented both the wrong party served and the party who should have been served, filed an answer on behalf of the wrong party served. In *Wright,* he even continued the case beyond the date on which the statute of limitations ran. In sustaining a demurrer without leave to amend, the court held that defendant was not estopped to assert the statute of limitations because it owed no duty to plaintiff to disclose any information, and because plaintiff was not misled by any act of defendant.

Our examination of *Wright* brings us to an inescapable conclusion. *Wright* is wrong. Its holding achieves an unjust result which should not be repeated here. Equitable estoppel as a bar to asserting the statute of limitations should have had its place in *Wright,* and it will have its place in the case at bench.

■ The doctrine of equitable estoppel is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estopped from obtaining the benefits of his misconduct. (*Morgan* v. *International Aviation Underwriters, Inc.* (1967) 250 Cal.App.2d 176, 180 [58 Cal.Rptr. 164].) ■ Under appropriate circumstances equitable estoppel will preclude a defendant from pleading the bar of the statute of limitations where the plaintiff was induced to refrain from bringing a timely action by the fraud, misrepresentation or deceptions of defendant. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689]; *Mills* v. *Mills* (1956) 147 Cal.App.2d 107, 119 [305 P.2d 61].) A defendant should not be permitted to lull his adversary into a false sense of security, cause the bar of the statute of limitations to occur and then plead in defense the delay occasioned by his own conduct. (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 433 [224 P.2d 702, 24 A.L.R.2d 1403]; *Holland* v. *Nelson* (1970) 5 Cal.App.3d 308, 313 [85 Cal.Rptr. 117].)

■ The elements of estoppel to plead the statute of limitations when a public entity is involved are as follows: " '(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to

believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*Denham* v. *County of Los Angeles* (1968) 259 Cal.App.2d 860, 866 [66 Cal.Rptr. 922], citing *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

". . . . Where the delay in commencing an action is induced by the conduct of the defendant, it cannot be availed of by him as a defense. . . . [¶] Actual fraud in the technical sense, bad faith, or an intent to mislead, are not essential to create such an estoppel. It is sufficient that the debtor made misrepresentations or so conducted himself that he misled the creditor, who acted thereon in good faith to the extent that he failed to commence action within the statutory period." (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 689-690 [252 P.2d 649].)

It is argued by defense counsel that estoppel should not apply here. Relying on the *Wright* case, he states he did nothing affirmatively to mislead the plaintiff in any way concerning the proper parties to this lawsuit. He did, however, set out to mislead Kleinecke. He filed an answer on behalf of the wrong defendant and used that answer as a shield to protect Water District. While his actions did not induce plaintiff to file its complaint against the wrong defendant, his filing of a sham answer lulled counsel for Kleinecke into a sense of security. It was a device deliberately used to divert his attention away from the statute of limitations.

Our position finds support in a Florida case based on similar facts, *Argenbright* v. *J.M. Fields Co.* (Fla.App. 1967) 196 So.2d 190. There, plaintiff suffered personal injuries when she fell in a store. She filed her suit for personal injuries against the wrong corporation which filed an answer containing a general denial of the allegations of the complaint. The wrong corporation sued had much in common with the corporation that should have been sued. It had a similar name, common officers, and the same counsel. Plaintiff's counsel did not learn of his error in suing the wrong party until after the statute of limitations had run. The court in *Argenbright, supra,* at page 193, citing *Hartford Acc. & Ind. Co.* v. *Interstate Equip. Corp.* (D.N.J. 1947) 74 F.Supp. 791, stated: " 'One cannot escape the conclusion that the answers filed in these cases were interposed for no other purpose than *to lull the plaintiff into a sense of security* until the fast running Statute of Limitation would rise up and prevent suits against the New York corporation. Thus serving as an answer in the interest of the New York corporation only. . . .' "

We note the words of Justice Holmes, " '[W]hen a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied.' " (*Argenbright* v. *J.M. Fields Co.*, *supra,* 196 So.2d at p. 194, citing *New York Central & Hudson River Railroad Co.* v. *Kinney* (1922) 260 U.S. 340, 346 [67 L.Ed. 294, 296, 43 S.Ct. 122, 123].)

██ Statutes of limitations are not so rigid that under certain circumstances principles of equity and justice will not allow them to be extended or tolled. This may happen by the occurrence of events or causes not mentioned in the statute itself. (*Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 411 [154 P.2d 399].)

██ In the case at bench we are convinced that defense counsel should be estopped from asserting the statute of limitations where the following has occurred: (1) some discussions occurred between plaintiff's counsel and defense counsel concerning the subject matter of plaintiff's complaint prior to the filing of the complaint; (2) the wrong party was served by plaintiff; (3) defense counsel represented both the wrong party served and the party who should have been served; (4) defense counsel filed an answer on behalf of the wrong party served; (5) the answer contained a general denial which served to divert plaintiff's counsel's attention away from the statute of limitations; and (6) no prejudice to defendant would occur by allowing plaintiff to proceed with its action.

We are mindful that Kleinecke's complaint contained a fictitious defendant clause, but that it failed to state a cause of action against any Doe defendant. Rather, it only alleged a cause of action against Sanitary District. Had Kleinecke stated a cause of action against a Doe defendant, he could have prevented the assertion of a statute of limitations defense. The filing of an answer, however, on behalf of Sanitary District served to conceal the danger and prevent Kleinecke's counsel from either curing this defect or serving the proper defendant.

The trial court observed that it would be speculation to assume that Kleinecke's counsel would have learned of the mistake before the statute of limitations had run if he had been served with Sanitary District's answer at his post office box. That may be true, but his chances of learning of his mistake before the statute of limitations had run would have been far greater if the answer on behalf of Sanitary District had never been filed in the first place.

Our holding is not an indictment of defense counsel who by fortuitous circumstances had the opportunity to represent his client in a manner sanctioned by *Wright* v. *Redwood Theatres, Inc., supra,* 49 Cal.App.2d 403. Our holding does not place upon defense counsel an affirmative duty to disclose to plaintiff his error; rather, it seeks to restrain him from taking willful action to mask that error from plaintiff. Further, our holding does not seek to abrogate or "water down" the statute of limitations, but only to prevent its misuse to attain an unjust result.

Although the case of *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829], involved a dismissal under Civil Code section 581 where the plaintiff who sought relief was required to prove his reasonable diligence, the court's comments on whether or not to dismiss have relevance here. The court noted the strong public policy in favor of disposing of cases on the merits whenever possible. Further the *Hocharian* court stated: "The decision whether or not to dismiss must be based on a balancing of the harm to the plaintiff if the motion is granted against the prejudice to the defendant if he is forced to defend the suit. [Fn. omitted.]" (*Id.,* at p. 724.)

Water District again relies on *Wright* v. *Redwood Theatres, Inc., supra,* 49 Cal.App.2d 403, when it argues that Kleinecke's counsel by the exercise of due diligence could have learned the facts. This may be true, but once the deceptive answer of Sanitary District was filed, he could reasonably assume he had served the correct party. The court in *Wright* was less concerned with balancing the equities than with highlighting the negligence of plaintiff's counsel. Similarly, in the instant case, the equation was incomplete. When defense counsel's conduct in filing the sham answer is also considered, the equities favor plaintiff. In addition, harm to Kleinecke if the defense of the statute of limitations is asserted, is far greater than any prejudice to Water District if it defends the suit.

As the clock ticked, the statute of limitations floated ominously near, camouflaged by the sham answer of Sanitary District. This allowed Water District to sleep through the proceedings. Such an opportunity to beguile one's opponent usually occurs in dreams. Dreams, however, even when they come true, last only "Till human voices wake us, and we drown."[2]

---

[2]T.S. Eliot, "The Love Song of J. Alfred Prufrock."

The judgment granting summary judgment because of the statute of limitations is reversed.

Stone, P. J., and Abbe, J., concurred.