Filed 12/31/24  Nelson v. Eastern Municipal Water District CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JEFFREY NELSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EASTERN MUNICIPAL WATER DISTRICT,<br><br>    Defendant and Respondent. | D083321<br><br><br>(Super. Ct. No. CVRI2203741) |

APPEAL from a judgment of the Superior Court of Riverside County, Carol A. Greene, Judge.  Affirmed.

Best Best & Krieger, Gregory G. Snarr, and Michael Thies for Plaintiff and Appellant.

Graves & King, Harvey W. Wimer III, and Bethany J. Ring for Defendant and Respondent.

This case highlights the importance of a critical skill for all attorneys—attention to detail.  For a plaintiff's counsel, it is essential to make sure you sue the correct party.  True, there may be times when it is difficult for a plaintiff to identity the entity that is causing injury.  This is not one of those

cases. On the other side of the coin, a defense counsel must carefully read the complaint to ensure he or she knows what entity has been sued. This may sound like a most basic task (and it is), but, in this case, it did not happen. Not surprisingly, confusion permeated the dispute, and this appeal is now before us.

The Government Claims Act (the Act) (Gov. Code,[1] § 810 et seq.) requires that an individual who believes he or she has been injured by a public entity file a claim against that public entity before initiating a lawsuit in California superior court. (See § 911.2.) Here, Jeffrey Nelson believed that he was being injured by the acts of a neighboring landowner, the Eastern Municipal Water District (District). Per the Act and with the apparent help of counsel, Nelson filed the appropriate claim against the District. The District denied the claim in writing, which then required Nelson to sue the District within six months. (See § 945.6, subd. (a)(1).)

Three months after the denial, Nelson filed suit in the Superior Court of Riverside County. However, instead of naming the District as a defendant, he named the Eastern Municipal Water District Facilities Corporation (Facilities Corporation). As Nelson alleged, the Facilities Corporation is not a public entity but "a California nonprofit mutual benefit corporation."

After Nelson served the Facilities Corporation with the complaint, an attorney who claimed to represent the District sent a meet and confer letter to Nelson's counsel, explaining why he believed the complaint did not state a valid claim against a public entity. However, the District had not been sued. Further, Nelson had not named a public entity as a defendant in his complaint. Not surprisingly, tumult followed.

---

[1] Statutory references are to the Government Code unless otherwise specified.

Nelson filed a first amended complaint, attempting to address the issues defense counsel noted. Yet, despite adding additional language related to suing a public entity, the amended complaint neither sued a public entity nor added the District as a defendant. These shortcomings did not stop defense counsel from again claiming that he represented the District in the action and again noting certain deficiencies in the complaint regarding claims against a public entity.

Only after the Facilities Corporation demurred to the first amended complaint did Nelson's counsel and defense counsel apparently understand the litigation quagmire that had been created. Nelson filed a second amended complaint, finally naming the District as a defendant but did so beyond the six month time limit of the Act. After the District's successful demurrer, the court granted Nelson leave to amend so he could allege why his suit against the District was not time-barred. Nelson thus filed a third amended complaint to which the District also demurred. The superior court sustained the demurrer without leave to amend and subsequently entered a judgment of dismissal.

Nelson appeals, arguing that the superior court erred in sustaining the demurrer because equitable estoppel and/or equitable tolling prohibit the application of the statute of limitations here. We are not persuaded and thus affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Nelson owns two homes located a little more than 1,000 feet from certain real property owned by the District. The District is a public entity that provides water, wastewater, and recycled water to about 880,000 people in Riverside County.

3

In 1979, the District created the Facilities Corporation under California's mutual non-profit public benefit corporation law " 'for the purpose of rendering financial assistance to [the District] by acquiring, constructing, and operating or providing for the operation of water and wastewater facilities, including . . . treatment plants and related facilities for the use, benefit and enjoyment of the public within [the District's] boundaries."

The District and the Facilities Corporation have been engaging in certain improvement projects on the District's property, including expanding an outdoor pond used to store treated wastewater. As part of that project, the District and the Facilities Corporation have excavated about 1.65 million cubic yards of dirt and remain in the process of selling that dirt.

Nelson believes that the excavated dirt has "collected harmful chemicals and other hazardous materials." Accordingly, "[t]he excavation and on-site storage of the contaminated soil from the construction of [the pond] allowed for fine, inhalable particles and dust to be raised in the air by wind or other atmospheric conditions and carried into surrounding communities," including the two homes owned by Nelson. The " 'fugitive emissions' " and " 'fugitive dust' " allegedly pose a threat to the environment and human health, causing damages to Nelson's homes and having a "significant impact to . . . Nelson's health."

The District hired Commodity Trucking Acquisition, LLC doing business as Dispatch Transportation (Dispatch Transportation) to remove some of the excavated dirt from the District's property, but Nelson alleged that neither the District nor Dispatch Transportation "use[d] adequate or proper methods to prevent dust and other materials from escaping [the District's] [p]roperty." This caused additional harm to Nelson's homes and

4

his health.  Specifically, because of the actions of the District, the Facilities Corporation, and Dispatch Transportation, Nelson has had a more difficult time recovering from throat cancer.

On April 27, 2022, Nelson, in compliance with the Act, submitted a claim to the District on the District's "official claim form," a pre-printed form requiring a claimant to provide certain information, including name, address, and injury.  The claim form was addressed only to the District and included the District's mailing address (a P.O. Box) and a physical address where claims could be submitted.  Nelson asserted that he and his homes had been damaged "[o]n account of improper dirt removal activities and resulting fugitive dust" on property owned by the District.  Nelson sought damages in the amount of $2.7 million.  In this claim, there was no mention of the Facilities Corporation whatsoever.

On June 2, 2022, the District, through its general counsel, denied Nelson's claim.  In doing so, the District informed Nelson that he had six months from the date of the denial "to file a Court action on this claim." Moreover, the District referred Nelson specifically to the statutes governing such claims, Government Code sections 900 et seq. and 945.6.  Finally, the District indicated its willingness to further discuss the matter with Nelson. The District's denial appears to have been sent to Nelson by way of Greg Snarr, an attorney who represents Nelson in this appeal.

Almost three months later, Nelson filed suit against the Facilities Corporation and Dispatch Transportation.  Regarding the Facilities Corporation, Nelson alleged that it "is a California nonprofit mutual benefit corporation with its principal place of business in Perris, California."  Nelson did not name the District as a defendant.  Nor did he allege that he had previously made a claim to that public entity pursuant to the Act.  In all, he

5

alleged five causes of action based on the excavated dirt from the District's property. However, in the complaint, Nelson alleged that the Facilities Corporation, not the District, owned the subject property. Nelson's attorney of record was Snarr of Best Best & Krieger, LLP.

The summons and complaint were served on the Facilities Corporation on September 9, 2022. On October 17, 2022, Harvey W. Wimer III, an attorney with Graves & King LLP, sent Snarr a letter in response to the complaint. In that letter, Wimer informed Snarr that his office represented "the Eastern Municipal Water District (the 'District')" regarding the complaint. Wimer wrote that he provided the letter "as a precursor to the required telephone conference, pursuant to *Code of Civil Procedure* §430.41, in which we will discuss our plan to demurrer to the Complaint." Wimer then asked Snarr to contact him at his "earliest convenience to schedule a telephone conference[,]" noting "[t]he District's responsive pleading to the Complaint is due on or before November 9, 2022." The letter then went on to detail why Wimer believed the complaint did not allege any valid causes of action against the District. The Facilities Corporation was not mentioned at all in Wimer's letter. The next day, Wimer sent another letter to Snarr to address the punitive damages allegations in the complaint. Again, Wimer stated that his office represented the District. There was no mention of the Facilities Corporation.

The parties subsequently met and conferred regarding the potential demurrer to the complaint, and Nelson, still represented by Snarr, opted to file a first amended complaint. In that complaint, Nelson again sued the Facilities Corporation and Dispatch Transportation. The District was not named. In addition, Nelson added two new causes of action, one of which was for inverse condemnation.

6

In response to the first amended complaint, Wimer sent another letter to Snarr, dated December 7, 2022, to meet and confer in anticipation of filing a demurrer. Again, Wimer stated that his office represented the District. There was no mention of the Facilities Corporation.

Nonetheless, the Facilities Corporation, represented by Wimer and his firm, filed a demurrer to the first amended complaint, but it only challenged the cause of action for inverse condemnation. In doing so, the Facilities Corporation noted that the operative complaint identified it as "a California nonprofit mutual benefit corporation[,]" and an inverse condemnation cause of action can only be validly alleged against a public entity.

In opposing the demurrer, Nelson argued that the Facilities Corporation was a proper defendant for the inverse condemnation claim because it was created by and under the control of the District. He also requested for the court's permission to file an amended complaint to add the District as a defendant.

The court sustained the demurrer, finding (among other things) that the inverse condemnation claim was improperly brought against a private party. The court provided Nelson with 20 days to file an amended complaint.

On February 8, 2023, Nelson filed a second amended complaint, adding the District as a named defendant. Notably, Nelson alleged that the District was a public entity; the District created the Facilities Corporation with its purpose to render financing assistance to the District; and although the District and the Facilities Corporation "are technically separate, legal entities, they are actually one in the same." Further, Nelson averred that the Facilities Corporation "is under complete and total control of [the District] and its elected Board of Directors." Also, for the first time in any version of

7

his complaint, Nelson alleged that he had submitted a claim to the District on April 27, 2022, in compliance with the Act.

The District demurred to the second amended complaint, arguing (among other things) that Nelson had failed to comply with section 945.6 because he filed suit against the District more than six months after the District denied his April 27 claim. Additionally, the District maintained that Nelson could not plead around the time requirements by alleging that the District and the Facilities Corporation are " 'one in the same.' "[2]

In opposing the District's demurrer, Nelson maintained that the District should be estopped from claiming that he did not comply with section 945.6 because he served the original complaint at the "exact location" the District required official claims to be filed. Also, Nelson argued that Wimer's meet and confer correspondence indicated that his office represented the District and did not mention The Facilities Corporation. Further, Nelson pointed out that Wimer's arguments in his meet and confer letter were focused on public entity law. Thus, Nelson asserts that his attorney believed that he had filed suit against the correct entity, and there was no distinction between the District and Facilities Corporation.

During oral argument on the District's demurrer, the court noted that "[t]he real issue is getting around the governmental claim statute with regard to [the District]." It also explained that Nelson had not sufficiently pled "any actual allegations of alter ego between" the District and Facilities Corporation. The court ultimately sustained the District's demurrer to the

---

[2] The Facilities Corporation also demurred to the second amended complaint but only challenged the cause of action for inverse condemnation. Because the results of that demurrer are not at issue in this appeal, we eschew any further discussion of it.

second amended complaint with leave to file a third amended complaint within 20 days.

On May 9, 2023, Nelson filed a third amended complaint. There, Nelson addressed the reasons the court should not find that he did not sue the District within six months of its denial of his claim as required by section 945.6. Specifically, he alleged that he served the complaint on the District's director of safety at the same office location listed on the District's official claim form. Nelson averred that his attorney received two meet and confer letters regarding the original complaint and in both these letters, Wimer stated that his office represented the District.

Similarly, after Nelson filed the first amended complaint, Wimer wrote a letter challenging the new complaint, claiming to represent the District. Based on Wimer's representations, Nelson alleged that his attorney believed that he had sued the District. In fact, it was not until Facilities Corporation demurred to the first amended complaint that Nelson learned there was a distinction between the District and Facilities Corporation. Upon further investigation, Nelson "learned there are actually several related entities bearing the name 'Eastern Municipal Water District,' . . . 'Eastern Municipal Water District Facilities Corporation,' and 'Eastern Municipal Water District Financing Authority.' "

In short, Nelson alleged that he intended to sue the District and was not aware "there was a technical, legal distinction between the two entities." He also averred that he had operated in good faith and the District suffered no prejudice because it was aware of the lawsuit since its inception.

The District demurred to the third amended complaint, again arguing that Nelson's suit was untimely under section 945.6 because he had not filed it within six months of the District denying Nelson's claim. Additionally, the

9

District asserted that it had taken no action to dissuade Nelson from suing it, and Nelson had not alleged an alter ego relationship between Facilities Corporation and the District. Finally, the District maintained that estoppel did not apply, and equitable tolling was not applicable.

In opposing the demurrer, Nelson argued that he filed and served the District with the original complaint within the required statutory period. He claimed that he wrongly named the District as Facilities Corporation in the complaint because the District, through its counsel, took certain steps to cause Nelson to believe he had served the correct public entity and had no reason to doubt that he had not sued the District. He also insisted that he alleged sufficient grounds to find that Facilities Corporation is the alter ego of the District.

After hearing oral argument and considering the papers, the court sustained the District's demurrer to the third amended complaint without leave to amend. The court subsequently entered a dismissal of the action in its entirety as against the District.

Nelson filed a timely notice of appeal.

## DISCUSSION

"Before suing a public entity, the plaintiff must present a timely written claim for damages to the entity. (Gov. Code, § 911.2; [citations].)" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208.) "Timely claim presentation is not merely a procedural requirement, but is, as this court long ago concluded, ' " 'a condition precedent to plaintiff's maintaining an action against defendant' " ' [citation], and thus an element of the plaintiff's cause of action. [Citation.] Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not

10

stating facts sufficient to constitute a cause of action. [Citation.]" (*Id.* at p. 209.) "Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity. (Gov. Code, §§ 912.4, 945.4; [citation].) The deadline for filing a lawsuit against a public entity, as set out in the government claims statute, is a true statute of limitations defining the time in which, after a claim presented to the government has been rejected or deemed rejected, the plaintiff must file a complaint alleging a cause of action based on the facts set out in the denied claim. (Code Civ. Proc., § 342; Gov. Code, § 945.6; [citations].)" (*Shirk*, at p. 209.)

"Section 945.6 governs the timely filing of an action against a public entity. With certain exceptions not relevant here, it declares, 'any suit brought against a public entity on a cause of action for which a claim is required to be presented . . . must be commenced: [¶] (1) If written notice [denying a claim] is given . . . , not later than six months after the date such notice is personally delivered or deposited in the mail. [¶] (2) If written notice is not given . . . , within two years from the accrual of the cause of action.' (§ 945.6, subd. (a).)" (*Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 87.)

It is undisputed that Nelson submitted a claim to the District for injuries to his person and property in compliance with the Act. The District denied that claim on June 1, 2022. It also is beyond dispute that Nelson did not add the District as a named defendant until after the six month period mandated by section 945.6, subdivision (a)(1). Thus, unless an exception applies, Nelson's claims are time-barred. (*Ibid.*)

11

Nelson argues two exceptions apply: equitable estoppel and equitable tolling. Thus, he claims that the trial court erred in sustaining the District's demurrer without leave to amend. We disagree.

The elements of equitable estoppel have been applied in the government claims context. "(1) [T]he party to be estopped [here, the District] must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party [here, Nelson] must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 (*Driscoll*); see *Orr v. City of Stockton* (2007) 150 Cal.App.4th 622, 635.)

Equitable estoppel generally requires an affirmative representation or act by the public entity. (*In re Marriage of Comer* (1996) 14 Cal.4th 504, 523; *Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 480.) It "most commonly results from misleading statements about the need for or advisability of a claim." (*Christopher P. v. Mojave Unified School Dist.* (1993) 19 Cal.App.4th 165, 170.) "Estoppel may also be invoked where conduct on behalf of the public entity induces a reasonably prudent person to avoid seeking legal advice or commencing litigation." (*Ibid.*, citing *Bertorelli v. City of Tulare* (1986) 180 Cal.App.3d 432, 440.)

Before we discuss Nelson's arguments regarding equitable estoppel, we must briefly address an argument that Nelson raises in his reply brief regarding the District's burden in this appeal.[3] The parties do not dispute

---

[3] Although we typically do not consider issues raised for the first time in a reply brief (see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158), we discuss this argument because it helps explain why Nelson did not address all the elements of equitable estoppel in the opening brief.

12

that we apply a de novo standard of review following a judgment of dismissal after a successful demurrer. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Thus, "we independently evaluate the challenged pleading, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. [Citation.] We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the accuracy of contentions, deductions, or conclusions of law." (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 753.)

Moreover, on appeal, "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.]" (*Martin v. Bridgeport Community Assoc., Inc.* (2009) 173 Cal.App.4th 1024, 1031; see *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880 ["Cantu bears the burden of overcoming *all* of the legal grounds on which the trial court sustained the demurrers, i.e., all of the grounds raised in both demurrers"].) Thus, here, where Nelson argues that the trial court erred in not concluding that the District was equitably estopped from asserting Nelson's claims are barred by the statute of limitations, the burden falls on Nelson to show this court that each of the elements of equitable estoppel have been met.

Nonetheless, Nelson apparently disagrees and argues in his reply brief that the District has the burden to demonstrate that the trial court erred in finding that Nelson established certain elements of equitable estoppel. In making this argument, Nelson relies on the trial court's tentative ruling. He notes that the tentative ruling was in his favor on the equitable estoppel

13

issue wherein the trial court ostensibly concluded that Nelson had alleged sufficient facts warranting the application of equitable estoppel. He further observes that the trial court, at the hearing on the demurrer, appeared to focus only on the element of reasonable reliance in deciding not to adopt the tentative ruling. He thus claims his only burden, in terms of showing the trial court erred in sustaining the demurrer, is to explain how the trial court erred in finding Nelson and his attorney's reliance on Wimer's meet and confer efforts was not reasonable.

We reject Nelson's hybrid burden approach for several reasons. First, the fulcrum of Nelson's argument is the trial court's tentative ruling. However, the court never adopted the tentative ruling. Indeed, the minute order following the hearing on the demurrer simply states that "a tentative ruling was issued" and the demurrer was "sustained without leave to amend." Consequently, the tentative ruling is of no legal significance here. Second, in explaining why it was sustaining the demurrer at the hearing, the trial court indicated that "the pleadings do not explain why when the claim was filed against the correct party," "the Complaint . . . deliberately seemed to be against a private company as opposed to a public entity[.]" Thus, although the court might have questioned whether Nelson and his counsel's reliance was reasonable, the court clearly found other deficiencies in the third amended complaint. Finally, Nelson provides no authority to support his proposed hybrid burden approach. Rather, he cites to cases that simply state the well accepted standard of review on appeals involving demurrers[4] or cases that recite the uncontroversial principle that on appeal, a judgment or

---

[4]    See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.

14

order is presumed correct.[5]  None of the cases on which Nelson relies stand for the proposition that a respondent has the burden of showing a trial court erred in making certain findings in its *tentative ruling*.

Therefore, in the instant matter, Nelson had the burden to show the trial court erred in sustaining the District's demurrer to the third amended complaint without leave to amend.  In doing so, he must show that the allegations in the operative complaint have sufficiently alleged equitable estoppel.  We turn to those arguments now.

Regarding equitable estoppel, Nelson's opening brief focuses almost exclusively on whether his and his attorney's reliance on representations Wimer made in his various letters was reasonable.  Although he does address the other elements of equitable estoppel in his reply brief, he only does so in the context of responding to the respondent's brief in which the District argued that Nelson had not addressed most of the elements of equitable estoppel in his opening brief.  Because Nelson as the appellant bears the burden to show reversible error on appeal (see *United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 829), Nelson's approach here is nearly fatal to his cause.  Nevertheless, in his opening brief, he argues that the instant matter is analogous to *Kleinecke v. Montecito Water Dist.* (1983) 147 Cal.App.3d 240 (*Kleinecke*), a case that discusses all the elements of equitable estoppel.

In *Kleinecke*, the plaintiff's counsel and counsel for the Montecito Water District had been discussing the subject dispute beginning in 1978.  After being unable to reach a resolution, the plaintiff filed a complaint in November 1980, but named the wrong defendant—the Montecito Sanitary

---

5    See *Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.

15

District.  (*Kleinecke, supra*, 147 Cal.App.3d at pp. 242–243.)  The Sanitary District and the Water District were two separate and distinct municipal corporations.  However, both public entities were represented by the same counsel.  Defense counsel then contacted the Water District, explained there was a possible statute of limitations defense because the plaintiff had sued the wrong entity, and asked what the Water District wanted the attorney to do.  Per the Water District's instructions, defense counsel did not tell the plaintiff's counsel that the plaintiff had sued the wrong entity but instead, filed an answer on behalf of the Sanitary District, generally denying the allegations and making no mention that it was the incorrect defendant.  (*Id.* at pp. 243–244.)

In May 1981, through answers to interrogatories, the plaintiff's counsel realized that the plaintiff had sued the wrong public entity.  He asked opposing counsel to stipulate to amending the complaint to add the Water District, but opposing counsel declined.  After some procedural wrangling, the plaintiff filed an amended complaint that included the Water District as a defendant.  The Water District ultimately filed a motion for summary judgment arguing that the plaintiff's action against the Water District was time-barred.  The plaintiff's attorney explained in a declaration that at the time he drafted the original complaint, he was not aware that the Sanitary District and the Water District were separate entities.  He further presumed that the Sanitary District was the successor entity to the Water District.  He did not realize his mistake until he received responses to interrogatories explaining that the Water District had changed its name and that the Sanitary District was a separate legal entity and not the direct successor to the Water District.  Nonetheless, the trial court granted the Water District's

16

motion for summary judgment on the grounds that the statute of limitations had run. (*Kleinecke, supra,* 147 Cal.App.3d at p. 244.)

In reversing the judgment, the appellate court explained why equitable estoppel was applicable to the Water District's contention that the plaintiff's claim was time-barred:

> "In the case at bench we are convinced that defense counsel should be estopped from asserting the statute of limitations where the following has occurred: (1) some discussions occurred between plaintiff's counsel and defense counsel concerning the subject matter of plaintiff's complaint prior to the filing of the complaint; (2) the wrong party was served by plaintiff; (3) defense counsel represented both the wrong party served and the party who should have been served; (4) defense counsel filed an answer on behalf of the wrong party served; (5) the answer contained a general denial which served to divert plaintiff's counsel's attention away from the statute of limitations; and (6) no prejudice to defendant would occur by allowing plaintiff to proceed with its action." (*Kleinecke, supra,* 147 Cal.App.3d at p. 247.)

Although the appellate court concluded that the Water District was estopped from claiming a statute of limitation defense, it characterized its holding as a limited one: "Our holding does not place upon defense counsel an affirmative duty to disclose to plaintiff his error; rather, it seeks to restrain him from taking willful action to mask that error from plaintiff. Further, our holding does not seek to abrogate or 'water down' the statute of limitations, but only to prevent its misuse to attain an unjust result." (*Kleinecke, supra,* 147 Cal.App.3d at p. 248.)

Here, two significant differences stand out between *Kleinecke* and the instant action. First, in *Kleinecke*, it is undisputed that the plaintiff sued the wrong public entity. He mistakenly sued Montecito Sanitary District but meant to sue Montecito Water District. (*Kleinecke, supra,* 147 Cal.App.3d at pp. 242–243.) In contrast, here, it appears that Nelson intended to sue

17

Facilities Corporation and the District. The instant matter is still proceeding against Facilities Corporation. And there is no indication in the original complaint that Nelson intended to sue a public entity. He clearly knew that Facilities Corporation was not a public entity as he alleged it was "a California nonprofit mutual benefit corporation." Further, there was no allegation in the original complaint (or even the first amended complaint) that Nelson had complied with the claim presentation requirement under the Act, which is an essential allegation for a plaintiff bringing a claim against a public entity. (*State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1243 (*Bodde*).)

Nelson's failure to name a public entity in his original complaint is all the more perplexing because he complied with the Act when he submitted a prelitigation claim to the District. The pre-printed claim form that Nelson completed clearly indicated that the proper entity was the District and provided the District's address. The very top of the form states, "Claim Against Eastern Municipal Water District." There is no mention whatsoever of Facilities Corporation in the pre-printed form. Further, with his claim, Nelson submitted a narrative description of the incident wherein he focused exclusively on the District. He did not claim that Facilities Corporation played any role in his claimed damages or injuries. Additionally, Nelson appears to have had the assistance of Snarr at that point as the District sent the denial of Nelson's claim to him.

In the third amended complaint, Nelson alleged that he believed he had "properly filed suit against" the District in the original complaint. Specifically, Nelson alleged that the original complaint was personally served on Douglas Hefley, the District's director of safety, at the "exact location" the District's "official claim form requires that claims against the District be

18

filed." Yet, these allegations do not explain why Nelson did not name any public entity in the initial complaint. The essential fact remains that the District was not named in the original complaint.

Nelson attempts to assuage our concerns on this point by alleging that Wimer's first two meet and confer letters led him to believe he had sued the District. Yet, Wimer's meet and confer letters underscore the second critical difference between the instant matter and *Kleinecke*. In *Kleinecke*, the Sanitary District's attorney took a passive approach to the litigation to obscure the fact that the plaintiff had sued the wrong public entity. (*Kleinecke*, s*upra*, 147 Cal.App.3d at pp. 243, 247.) Here, Wimer did not act similarly. To the contrary, Wimer told Snarr, Nelson's attorney, albeit incorrectly, that his office represented the District in the instant action. If this was all that Wimer stated in his letter, Nelson would have a stronger argument that he and his attorney were led astray by Wimer's representations.[6] However, Wimer detailed over four pages why the original complaint did not state a valid claim against a *public entity*. Indeed, Wimer used the term "public entity" no fewer than 14 times in his first meet and confer letter. At the very least, Wimer's meet and confer letter should have caused Nelson and Snarr to scrutinize the original complaint with an eye toward its allegations against a public entity. Had they done so they would have seen that there were no allegations against any public entity. Nelson

---

[6]    However, we are not persuaded that this hypothetical necessarily would carry the day for Nelson. At the very least, it should have been apparent that there was some confusion in the instant matter. Nelson had named the Facilities Corporation as a defendant. Wimer did not mention the Facilities Corporation at all in his letter. That omission, at the very least, should have set off a cautionary alarm for Snarr to clarify that the Facilities Corporation and the District were the same entity. He did not do so in a timely manner.

19

did not allege that Facilities Corporation is a public entity. Nelson did not allege that Dispatch Transportation is a public entity. There literally are no allegations in the original complaint that a public entity is involved in any way.

So, although there existed some uncertainty, Nelson and Snarr were on notice around October 17, 2023 that something was amiss with the original complaint. Wimer stated that the original complaint did not allege any valid claim against a public entity. And, although Nelson explicitly sued Facilities Corporation, Wimer made no mention of this entity in his meet and confer letter. Rather, Wimer claimed to represent an actual public entity (the District) that had not been named as a defendant in this matter. These two points should have led Nelson and Snarr to consider the following: (1) Should a public entity be named in the complaint and (2) What is the relationship between the District and Facilities Corporation.

Despite these critical open issues, Nelson argues it was reasonable for his attorney and him to rely on Wimer's meet and confer letter to believe that the operative complaint named the District and the District had been served. To this end, he emphasizes: (1) an entity that was not sued would not hire an attorney who would then communicate with opposing counsel about a forthcoming demurrer; (2) if Nelson's counsel received a meet and confer letter from opposing counsel stating he represents a public agency in the litigation, it is reasonable for Nelson's counsel to believe Nelson had brought suit against a public entity; and (3) the meet and confer letters Wimer sent focused on the alleged insufficiency of Nelson's claims against a public agency.

We agree with Nelson on his first point. It is beyond odd that an entity that had not been sued would hire an attorney who would then meet and

20

confer with plaintiff's counsel about a possible demurrer. Wimer's October 17, 2022, meet and confer letter calls into question both Facilities Corporation's and the District's internal procedures for receiving legal process. The original complaint clearly states that Facilities Corporation was named as a defendant. The District was not. The proof of service states that Facilities Corporation was the entity served, not the District. Yet, at least initially, it appears the District may have believed it was sued and then reached out to Wimer for representation.[7]

In addition, Wimer's October 17 letter underscores his confusion about the original complaint, and perhaps, his lack of attention to detail. If the District reached out to Wimer for representation based on the original complaint, it logically follows that the District would have forwarded Wimer the complaint. Even a cursory reading of the complaint would have shown Wimer that the District had not been named as a defendant, but instead, Facilities Corporation was. Further, Wimer's October 17 letter is even more baffling because he focused on the deficiencies of the original complaint in stating a claim against a public entity. But again, what cannot be disputed from simply perusing the original complaint and the proof of service is that Nelson had not sued any public entity.

Despite the bewildering nature of the October 17, 2022 letter, it appears that letter either provided Nelson and his attorney with the

---

[7]    There is no explanation in the record why this is so. However, we note that although Nelson named "Eastern Municipal Water District Facilities Corporation" in the original complaint, he referred to the Facilities Corporation by the initials "EMWD." And those same initials appear on the pre-printed claim form for the District. Perhaps, Wimer focused on Nelson's use of EMWD as shorthand for the Facilities Corporation and did not carefully read the allegations in paragraph two of the original complaint that Nelson had named the Facilities Corporation as a defendant. Again, there were no allegations against the District whatsoever in the original complaint.

21

information needed to correct the complaint or put them on notice they had some additional investigation to do. In the letter, Wimer takes the position that the District had been served and the complaint does not properly allege causes of action against a *public entity*. Wimer's position should have given Nelson and his attorney pause because they had not sued a public entity. Nelson had not sued the District. This is beyond dispute.

At that point, we see three reasonable, prudent responses. One, Nelson and his attorney could have responded to Wimer's letter that they did not sue a public entity but rather, a corporation. Accordingly, Wimer's arguments were moot. Two, Nelson and his attorney could have reviewed the original complaint and then added allegations to sufficiently allege claims against a public entity. In some ways, they did this in filing a first amended complaint, but they omitted a critical component—they did not add a public entity as a defendant. Three, Nelson and his attorney could have asked Wimer for some clarification regarding his stated representation of the District in the action. Wimer explicitly stated he represented the District, a public entity. A logical and sensible inquiry at that point would have been: "Wait a second. We did not serve a public entity, and your letter makes no mention of Facilities Corporation. Are Facilities Corporation and the District the same entity?"

But Nelson and his attorney did not make any of the responses we contemplate. Rather, it appears that Nelson and his attorney simply relied on the October 17, 2022 letter to assume that the District had been served with the complaint. This could only make sense if Nelson and his attorney believed the District and Facilities Corporation to be one and the same. Indeed, this appears to be the foundation of Nelson's argument on appeal: "Nelson already stated at the trial court level that he and his legal counsel were not aware there were a mixture of public and private entities all bearing

22

essentially the same name 'Eastern Municipal Water District,' or that they all were located at [the District's] main office in Perris." As we explain *post*, we conclude that Nelson's belief that Facilities Corporation and the District were the same entity was not reasonable on the record before us.

This is not a case where a plaintiff is unsure of the identity of the entity he believes is causing him harm. From the beginning, Nelson focused on the District. He filed a prelitigation claim, as required by the Act, against the District. And he was represented by counsel when he did so. At that point, Nelson appeared to know that that the District was the proper defendant and that he must comply with the Act before naming it in a lawsuit. However, in somewhat mystifying fashion, after the District denied his claim, Nelson sued not the District (the entity he had already identified as being in the wrong), but Facilities Corporation. And Nelson explicitly acknowledged by way of the allegations in the complaint that he was aware that Facilities Corporation is not a public entity.[8]

Nelson's only explanation for suing Facilities Corporation is his claimed ignorance that there are multiple entities sharing the name "Eastern Municipal Water District" operating out of the same main office. Yet, Nelson's previous actions belie his claim of ignorance. He had already identified the District as the alleged bad actor and made the statutorily required claim to the District. Nelson did not mention Facilities Corporation

[8]     During oral argument, Nelson's attorney claimed the naming of Facilities Corporation as a defendant in the original complaint was simply a "clerical error." Yet, the allegations in the original complaint belie any indication that Facilities Corporation was named by mistake. After all, in the original complaint, Nelson correctly identified Facilities Corporation as "a California nonprofit mutual benefit corporation." Moreover, Facilities Corporation remains a defendant in the current litigation, suggesting that Nelson still believes Facilities Corporation is responsible for at least some of the alleged damages.

23

in his prelitigation claim. Nowhere in the pre-printed portion of the claim form is Facilities Corporation listed. But Nelson filed suit against Facilities Corporation, not the District. Moreover, there was no indication in the original complaint that Nelson intended to sue the District. There was no allegation that he had complied with the Act by making the statutorily required claim to a public entity, and such an allegation is essential to any claim of damages against a public entity. (*Bodde*, *supra*, 32 Cal.4th at p. 1243.)

We note that Nelson claims to have been confused by the number of entities bearing "Eastern Municipal Water District" in their name, but that confusion does not help Nelson's argument here. Again, we note that Nelson filed the prelitigation claim with the correct public entity. Further, Nelson attached two exhibits to his third amended complaint that further vitiate his claim that he did not know the correct entity to sue. The first document attached was a portion of the *Annual Comprehensive Financial Report For Fiscal Year Ended June 30, 2022*. (Italics added.) That document lists the reporting entity as the District, but also details the District's creation of Facilities Corporation. The second document is entitled "Recycled Water Ponds Expansion and Optimization Project," which was prepared for the District in March 2013. That document discusses the pond project that Nelson alleged caused him harm. The document makes clear that the District is planning the construction, operation, and maintenance of the project. Facilities Corporation is not mentioned. Both these documents predated the filing of the original complaint. Thus, Nelson has shown that there was publicly available information explaining the difference between the District and Facilities Corporation as well as supporting his belief that the District was the responsible entity for his alleged harm.

24

In summary, Nelson believed the District had harmed him. He properly brought a prelitigation claim under the Act, which the District denied. There were documents predating the filing of the original complaint explaining the difference between the District and Facilities Corporation as well as indicating that the District was involved in the project that Nelson alleged harmed him. The original complaint named Facilities Corporation as a defendant. It did not name the District or any other public entity. The proof of service of that complaint clearly stated that Facilities Corporation was the entity served. Although Wimer's October 17, 2022 letter injected some uncertainty into the situation regarding the status of the District as a defendant in the instant action, Nelson's subsequently filed first amended complaint still did not name the District or any other public entity as a defendant. Nor did he allege that he had complied with the Act's prelitigation claim process. Against, this backdrop, Nelson has not alleged in his third amended complaint or persuasively explained on appeal that the District intended for Nelson to rely on the October 17, 2022 letter to his detriment or that Nelson was ignorant of the true state of facts. (See *Driscoll*, *supra*, 67 Cal.2d at p. 305.) Consequently, we agree with the trial court that Nelson has not shown that equitable estoppel was applicable in the instant action.

For similar reasons, Nelson's argument that his claim against the District should be equitably tolled is without merit.[9] In general, "a plaintiff seeking the benefit of equitable tolling must show three elements: ' "timely

---

[9] For the reasons discussed *ante*, we summarily reject Nelson's argument that the District had the burden on appeal to show that the superior court erred in finding certain elements of equitable tolling had been satisfied as indicated in the tentative ruling on the demurrer to the third amended complaint.

notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." ' " (*Long v. Forty Niners Football Co., LLC* (2019) 33 Cal.App.5th 550, 555.) An "analysis of reasonableness focuses not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances." (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 729.) As we discussed *ante*, Nelson's reliance on Wimer's meet and confer letters to lead him to believe that he had served and/or named the District in the original complaint was not reasonable. Thus, we conclude that equitable tolling is not applicable to Nelson's claims against the District.

DISPOSITION

The judgment is affirmed. The District is entitled to its costs on appeal.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

26